HOWETH INVESTMENTS, INC. and Jack Howeth, as Trustee for the 881 Brogden Trust and the 901 Brogden Trust, Assignees of Howeth Investments, Inc., Appellants,

v.

The CITY OF HEDWIG VILLAGE, the City of Hedwig Village Planning & Zoning Commission, S. Frank White, Robert A. Wiener, Norman A. Ward, and Katherine Vazquez, Appellees.

No. 01–05–00904–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 17, 2008.

See also 73 S.W.3d 389, 227 S.W.3d 205.

Millard A. Johnson, David Christopher Deiss, Johnson DeLuca Kennedy & Kurisky, Brent L. Vannoy, Richard P. Hogan, Jr., Hogan & Hogan LLP, Houston, for Appellants.

Scott Bounds, John J. Hightower, Olson & Olson, L.L.P., Houston, for Appellees.

Panel consists of Justices TAFT, ALCALA, and HANKS.

## OPINION

TIM TAFT, Justice.

Appellants, Howeth Investments, Inc. and Jack Howeth, as trustee for the 881 Brogden Trust and the 901 Brogden Trust, assignees of Howeth Investments, Inc. (collectively, the "Howeth parties"), appeal from a final, take-nothing judgment rendered after a bench trial. We determine (1) whether the Howeth parties have timely challenged all bases on which the trial court's judgment rests; (2) whether the trial court erred in denying mandamus, injunctive, and declaratory relief to compel appellee the City of Hedwig Village Planning and Zoning Commission ("the Commission") to issue certificates of no action on the Howeth parties' plat applications for two lots of property located within the City of Hedwig Village ("the City"); and (3) whether an ordinance of the City that the Commission interpreted to deny the Howeth parties' plat applications for subdividing these two properties was unconstitutionally vague, facially or as applied. We affirm.

## Background

Jack Howeth was a real-estate developer and also the former mayor of a neighboring municipality. He was also the president of Howeth Investments, Inc. and the trustee for the two trusts named above, which in turn were assignees of Howeth Investments, Inc. Howeth Investments, Inc. was in the business of purchasing and developing real estate.

Two adjacent, undivided properties within the City are involved in this lawsuit. Both properties are located on Brogden Street. One of the properties was located at 901 Brogden, which the Howeth parties designate as "the Jennings property." The other was located at 881 Brogden, which the Howeth parties designate as "the Dorsey property." We refer to the individual pieces of property as the Jennings property and the Dorsey property, while we refer to them together as "the Brogden properties."

In March 2000, Howeth Investments, Inc. contracted to purchase the Brogden properties. The contracts for sale of the Brogden properties provided that Howeth Investments, Inc. did not have to purchase the respective piece of property if it was unable to obtain approval of a subdivision plat dividing the Brogden properties into three lots.[1]

In June 2000, the Brogden properties' sellers submitted preliminary plat applications ("the June preliminary plat" applications) to the Commission for subdivision of the Brogden properties. The June preliminary plat applications proposed subdividing each property into two lots. The only way to subdivide the Brogden properties separately while still meeting the City's other development requirements was to subdivide each property into two sub-lots, with one of the subdivided lots on each piece of property having a "flag" configuration. A flag configuration is one in which one lot is behind the other relative to the street, so that the back lot has access to the street only by virtue of a long

---

1. The parties appear to have disputed below the meaning of this contractual provision. The Howeth parties contended that the contracts allowed Howeth Investments, Inc. not to consummate the contract for a particular piece of property if that property could not be subdivided into three lots, for a total of six lots on the two properties. Appellees contended that the contracts, although entered into separately, allowed Howeth Investments, Inc. not to consummate the contract for either property if, after the Jennings and Dorsey properties had been combined, that combined property could not be divided into three lots total.

driveway; the driveway appears from the air to resemble a flagpole, and the rear lot appears to be the flag atop the pole. In a flag configuration, the owner of the rear lot has fee simple title to the "flag pole" driveway.

The Commission scheduled a hearing for July 5, 2000 to consider the June preliminary plat applications. At the hearing, the Howeth parties presented the applications on behalf of the property owners. The Howeth parties relied on section 16–38 of the City's Code of Ordinances for approval of the flag-lot configuration:

Sec. 16–38. Lots, general provisions.

The purpose of this section is to provide general overall guidelines for the establishment of individual lots within a subdivision.

. . .

(c) Key or Flag Shaped Lots. Unless unavoidable, key or flag shaped lots shall not be permitted. . . . .

Code of Ordinances, City of Hedwig Village § 16–38 (Ord. No. 345, § 3.13, 4–11–91). Much of the hearing focused on the meaning of "unavoidable" in section 16–38. A ruling on the applications was deferred until the Commission's next regular meeting (August 2, 2000), so that the City's attorney, Alan Petrov, could research the meaning of "unavoidable" and so that the City's Building Official, Paul Addington, could give input on the applications.

On July 15, 2000, the Howeth parties sought certificates of no action from the Commission because it had allegedly not acted timely on the June preliminary plat applications under the timelines established by the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 212.009(a) (Vernon 1999) ("The municipal authority responsible for approving plats shall act on a plat within 30 days after the date the plat is filed. *A plat is considered approved by the municipal authority unless it is disapproved within*

*that period*.") (emphasis added); *id.* § 212.009(d) (Vernon 1999) (requiring that planning commission issue certificate of no action upon request if commission fails to approve plat within 30–day period). The City's attorney denied the request, asserting that section 212.009 did not apply to preliminary plats.

At the August 2, 2000 Commission hearing, the Howeth parties again participated in a discussion of the June preliminary plat applications. As at the July 15 hearing, much of the August 2 hearing focused on the meaning of "unavoidable" in section 16–38. Petrov told the Commission that the term unavoidable was not defined in the ordinance, that no case law or legislative history shed light on its meaning, and that it was thus "in the discretion of" the Commission "to come to an agreement on the definition of" the term. Petrov advised that he saw two reasonable definitions of unavoidable: (1) that *development* of the land was otherwise impossible, an interpretation requiring denial of the preliminary plat applications because the lots could be developed with one home per property, and (2) that *subdivision* of the land was otherwise impossible, an interpretation that could allow approval of the preliminary plats because neither of the Brogden properties could be subdivided into anything but flag lots without violating the City's length and width requirements for lots. Although Petrov believed that interpretation (2) was the more logical, he advised the Commission that it was in "the Commission's discretion to decide what 'unless unavoidable' meant, noting that whatever conclusion the Commission reached, a few words should be added to the sections of the Code to provide clarification." A divided Commission thereafter voted to deny the June preliminary plat applications. Those voting to deny the applications were appellees S. Frank White, the Commission Chairman, and

Robert A. Weiner and Norman E. Ward, Commission members. When polled, White and Ward expressed that they did not want flag lots for aesthetic, density, or other reasons that did not involve interpretation of "unavoidable," although Weiner's statement (and a later statement by White) indicated that they had adopted interpretation (1) of "unavoidable." A written decision later sent to the Howeth parties indicated that the decision had been based in part on the flag lots' not having been unavoidable, as the Commission had interpreted that term.

On August 13, 2000, the Brogden properties' sellers simultaneously submitted new preliminary and final plat applications for the Brogden properties ("the August preliminary and final plat" applications). Rather than proposing flag configurations, the August preliminary and final plats gave the rear subdivided lots on each of the Brogden properties ingress and egress by virtue of permanent easements over the front subdivided lots. The subdivision configuration for each lot was similar to that submitted in the June preliminary plats, in that a long driveway resembling a flagpole was still used for access to the rear lot; however, the sizes of the two sublots were modified in recognition of the use of an easement, rather than fee simple title, for that driveway. At the Commission's August 30, 2000 meeting, after a discussion including the Howeth parties, a divided Commission voted to deny the August preliminary and final plat applications. Those voting against the applications were White, Ward, Weiner, appellee Kathy H. Vazquez (a Commission member), and two other Commission members who have not been sued.

Some time after the August 30 hearing, the City imposed a moratorium on plat applications in order to discuss the issue of flag lots. In March 2001, the City Council of Hedwig Village amended the City's Code of Ordinances to prohibit flag lots entirely. Code of Ordinances, City of Hedwig Village § 74–123(3) (Ord. No. 498, § 1(16–38), 3–29–2001).

In September 2000, during the moratorium on plat applications and despite the rejection of both the June preliminary plat applications and the August preliminary and final plat applications, Howeth Investments, Inc. nonetheless purchased the Dorsey and Jennings properties. The appellant trusts eventually obtained title to the properties. In May 2001, the Brogden property sellers assigned their interest in the June preliminary plat applications and the August preliminary and final plat applications to the appellant trusts.

The Howeth parties eventually commenced development of a home on the front portion of the Jennings and Dorsey properties (what the Howeth parties considered to be the front lots of each piece of property, as they proposed subdividing them). The Howeth parties alleged that, during the building process, they were singled out by harsh or retaliatory enforcement of ordinances against their construction and their realtor, by delay in the approval of building permits for the construction, and by the filing of allegedly wrongful lis pendens on the Brogden properties. As of the time of trial, the Howeth parties had not yet completed either home on either of the Brogden properties.

In October 2000, the Howeth parties sued the City, the Commission, and White in his official capacity for violations of the Texas Open Meetings Act, for regulatory takings, and for mandamus and declaratory relief. In April and June of 2002, Judge Jeff Work, who was presiding over the case at the time, entered two interlocutory orders disposing of the parties' cross-motions for summary judgment. Judge Work granted the defendants' motion in part, rendering an interlocutory, take-

nothing judgment on the Texas Open Meetings Act claim. Judge Work also granted the Howeth parties' motion in part, entering the following, interlocutory declarations and order:

DECLARED that the plat applications filed by [the Howeth parties] with the [City] on June 6, 2000 were not acted on within 30 days; ...

DECLARED that the plat applications filed by [the Howeth parties] with the [City] on June 6, 2000 were approved by force of Texas Local Government Code 212.009; ...

ORDERED that a writ of mandamus issue as against the Chair of [the Commission] ... instructing Respondent White to issue two Certificates of no Action Taken, as a result of the Commission's failure to consider said Applications within the thirty (30) day period required by state law;....

It is unclear from the record whether a writ of mandamus ever issued, but no one disputes that the Commission did not issue certificates of no action after the entry of Judge Work's order.

By the time of trial in June of 2004, the Howeth parties had added as defendants in their individual capacity Weiner, Ward, and Vazquez and alleged claims against White in his individual capacity. At that same point in time, the Howeth parties asserted the following claims against the following defendants:

1. *Violation of the Texas Open Meetings Act*[2]

Factual Basis: the Commission's holding a closed, executive session during the August 30, 2000 meeting

Defendants: the Commission and White, in what appears to be his official capacity (and, thus, the City)[3]

Relief Sought: voiding of the August 30, 2000 votes and the issuance of mandamus to order certificates of no action on the June preliminary plat applications

2. *Writs of Mandamus*

Factual Bases: (1) the Commission's failure to issue certificates of no action on the June preliminary plat applications and (2) its denial of all of the Howeth parties' plat applications

Defendants: the Commission and White, in his official capacity

Relief Sought: issuance of mandamus to require the Commission (1) to issue certificates of no action on the June preliminary plat applications, (2) to approve the June preliminary plat applications, and (3) to approve the August preliminary and final plat applications

3. *Mandatory Temporary and Permanent Injunctions*

Factual Bases: (1) the Commission's failure to issue certificates of no action to approve the any of the Howeth parties' plat applications, (2) its failure to approve the August preliminary and final plat applications, and (3) its failure to issue building permits

Defendant: The City

Relief Sought: injunctions ordering (1) that certificates of no action is-

---

2. The Howeth parties asserted this claim even though Judge Work's 2002 interlocutory summary-judgment order had disposed of it.

3. The Howeth parties also may have asserted this allegation against the individual defendants, in their individual capacities, by virtue

of a catch-all allegation at the end of the petition that the individual defendants were "being sued and [were] liable for damages in their individual capacities *for all of the claims asserted herein.*" (Emphasis added.) Against the individual defendants, the Howeth parties generally sought monetary damages.

sue, (2) that the August preliminary and final plat applications be approved, (3) that the Brogden properties be allowed to begin subdivision, (4) that cause be shown as to why building permits had not been issued, (5) that building permits issue (alternatively, that no punitive actions be taken for the Howeth parties' not obtaining building permits)

4. *Declaratory Judgment*

Factual Bases: (1) the Commission's failure to issue certificates of no action on the June preliminary plat applications and (2) its failure to approve any of the Howeth parties' plat applications

Defendants: N/A

Relief Sought: declarations that (1) the flag-lot configuration was "unavoidable"; (2) the June and August plat applications met "all the requirements of the pertinent provisions of Texas state law, the Codes and the City Ordinances"; (3) the Howeth parties were entitled to certificates of no action on the June preliminary plat applications and, alternatively, that those plat applications be approved; (4) the Howeth parties were entitled to approval of the August preliminary and final plat applications; and (5) the Commission's actions on August 2, 2000 were void for its failure to have issued certificates of no action in July

5. *Regulatory Takings (inverse condemnation) Under the State and Federal Constitutions*[4]

Factual Bases: (1) the Commission's denial of all plat applications and (2) the City's moratorium on plat applications and subsequent banning of all flag lots after the Brogden properties' plat applications were rejected in August 2000

Defendants: the Commission and White, in his official capacity (and, thus, the City)[5]

Relief Sought: (1) declaration that the Commission's conduct "constitutes an unlawful regulatory taking" entitling the Howeth parties to reasonable compensation, (2) reasonable compensation, and (3) damages for reduction of the Howeth parties' "investment backed expectations"

6. *Violation of State and Federal*[6] *Procedural Due Process and Due Course of Law (42 U.S.C. section 1983*[7]*)*

Factual Bases: (1) the Commission's depriving the Howeth parties of a meaningful opportunity to be heard and (2) its employing a "constitutionally defective process that lacked fundamental fairness"

Defendants: all defendants

Relief Sought: damages

7. *Tortious Interference with Contractual Relationships*

Factual Bases: (1) unspecified actions that interfered with the Howeth parties' relationship with its real-estate broker (apparently concerning the enforcement of the City's

---

**4.** *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 17.

**5.** The Howeth parties also asserted this allegation against the individual defendants, in their individual capacities, by virtue of the same catch-all allegation mentioned above.

**6.** The petition cited only to the State constitutional Due Course of Law provision, but the content under that allegation mentioned procedural "due process" rights, terminology from the federal Constitution's Due Process Clause. *See* U.S. CONST. amends. V, XIV, § 1.

**7.** *See* 42 U.S.C.S. § 1983 (LexisNexis 2002).

sign ordinance) and (2) unspecified actions that interfered with the Howeth parties' "prospective rights with regard to future purchasers of" the Brogden properties

Defendants: all defendants

Relief Sought: damages

8. *Violation of State and Federal Substantive Due Process and Due Course of Law (42 U.S.C. section 1983 )*

Factual Bases: (1) denial of all plat applications, (2) failure to issue certificates of no action, (3) failure to comply "with court orders," (4) filing of a wrongful lis pendens against the Brogden properties, (5) "wrongful and punitive enforcement" of the sign ordinance, (6) trespassing onto the Brogden properties to remove signs, (7) unlawful use of police power to enforce tree ordinance, and (8) "arbitrary, punitive and disparate" use of permitting process

Defendants: all defendants, with respect to (1) and (2), and the individual defendants and the City, with respect to (3) through (8)

Relief Sought: damages

9. *Violation of State and Federal Equal Protection (42 U.S.C. section 1983 )*

Factual Basis: (1) denial of all plat applications, (2) failure to issue certificates of no action, (3) failure to comply "with court orders," (4) filing of a wrongful lis pendens against the Brogden properties, (5) "wrongful and punitive enforcement" of the sign ordinance, (6) trespassing onto the Brogden properties to remove signs, (7) unlawful use of police power to enforce tree ordinance, and (8) "arbitrary, punitive and disparate" use of permitting process

Defendants: all defendants, with respect to (1) and (2), and the individual defendants and the City, with respect to (3) through (8)

Relief Sought: damages

Appellees answered, asserting as affirmative defenses, among other matters, that (1) governmental immunity from suit barred the Howeth parties' claims for damages for equal protection and due process violations and for tortious interference with contracts against the City, the Commission, and White in his official capacity; (2) the Howeth parties lacked standing to assert any claims because none of them owned the Brogden properties at the time that the various plat applications were submitted or denied; and (3) the Howeth parties' claims for damages against the individual defendants in their individual capacities were barred by official immunity, qualified immunity, judicial immunity, legislative immunity, and the federal Volunteer Protection Act.[8] Appellees also asserted a counterclaim seeking an injunction to prevent the Howeth parties from selling the Brogden properties as divided tracts until subdivision plats had been approved for those properties.

Before trial, the trial court dismissed the Howeth parties' takings claims against all appellees after having concluded that only a Harris County court at law had jurisdiction over those claims.[9] After a

---

8. *See* 42 U.S.C.S. §§ 14501–14505 (LexisNexis 2004).

9. The Howeth parties refiled their regulatory takings claims against appellees in Harris County Court at Law No. 1. The county court rendered an interlocutory, take-nothing summary judgment on the Howeth parties'

claims in that second suit against the individual defendants, which ruling the trial court later finalized by severance. The Howeth parties appealed that ruling to this Court, which has already determined that appeal. *See Howeth Investments, Inc. v. White,* 227

bench trial, the court rendered a take-nothing judgment on all of the Howeth parties' remaining claims and, by "mother hubbard" clause, rendered judgment against appellees' counterclaim for an injunction against the Howeth parties. In that final judgment, the court also vacated Judge Work's interlocutory summary-judgment orders. The trial court entered fact findings and legal conclusions.

## Unchallenged and Improperly Raised Matters

### A. Violation of the Texas Open Meetings Act

Under no issue or argument do the Howeth parties challenge the rendition of a take-nothing judgment on their claim for violation of the Texas Open Meetings Act. We must, therefore, affirm the judgment rendered against this claim. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex.2001); *Garcia v. Nat'l Eligibility Express, Inc.*, 4 S.W.3d 887, 889 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

### B. Tortious interference with Contract

Likewise, under no issue or argument do the Howeth parties challenge the rendition of a take-nothing judgment on their claim for tortious interference with contract against any appellee. We thus affirm the judgment rendered against this claim. *See Jacobs*, 65 S.W.3d at 655; *Garcia*, 4 S.W.3d at 889.

### C. Violation of Procedural Due Process

The Howeth parties also do not challenge the rendition of a take-nothing judgment on their claim for violation of procedural due process. We thus affirm the judgment rendered against this claim, as well. *See Jacobs*, 65 S.W.3d at 655; *Garcia*, 4 S.W.3d at 889.

### D. Section 1983 Claims for Damages Based on Violations of Equal Protection, Substantive Due Process, and Substantive Due course of Law

The Howeth parties do not explain under this or any other appellate challenge which fact findings or legal conclusions they are challenging. We have nonetheless reviewed the substance of all of their appellate arguments to determine, as best we can, which fact findings and legal conclusions the Howeth parties have implicitly challenged for each appellate argument. *See City of Pasadena v. Gennedy*, 125 S.W.3d 687, 691 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (construing appellant's challenges, which did not specify to which fact findings or legal conclusions they related, to attack pertinent fact findings and legal conclusions supporting complained-of aspects of judgment); *see also* TEX.R.APP. P. 38.1(e), 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants."). Applying this liberal standard, we nonetheless do not find in the Howeth parties' opening brief any argument that can reasonably be construed as challenging the following fact findings that are material to their constitutional claims for damages under section 1983:

- the only actions that the individual defendants took with regard to the Howeth parties or their plats was to vote on their plats at the pertinent Commission meetings (all individual defendants) or to refuse to issue certificates of no action (White) (fact findings 3 and 4);
- the Howeth parties did not have an ownership interest in the Brogden properties at the time that the plats were denied (fact finding 8);

- the Howeth parties suffered no damages from the City's actions in connection with the construction of the house built on each of the Brogden properties (fact finding 10);[10]
- "Had [the Howeth parties] moved forward with the construction of one new single-family home on each [of the Brogden properties] they could have realized a substantial profit from the sale of [the Brogden properties] in their undivided condition." (fact finding 13)

Neither do we find in the Howeth parties' opening brief any argument that we can construe as a challenge to the following legal conclusions that are material to their constitutional claims for damages under section 1983:

- Plat approval is a quasi-judicial function, and individual planning and zoning commission members who vote on plats are acting in a quasi-judicial capacity (legal conclusion 1);
- the individual defendants were entitled to absolute or quasi-judicial immunity for the Howeth parties' state and federal claims against them (legal conclusion 2);
- the earnest money contracts to purchase the Brogden properties did not give the Howeth parties a vested interest in "the subject tracts" (legal conclusion 8);
- the Howeth parties lacked standing to pursue claims for damages arising out

of the denial of the various plats (legal conclusion 9); and

- the Howeth parties did not have a vested property interest in the approval of any of their plat applications (legal conclusion 10).

■ "[A]n appellate court will overrule a challenge to fact findings that underpin a legal conclusion or disposition when other fact findings that also support that legal conclusion or disposition go unchallenged." *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 682 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *see Long v. Long*, 196 S.W.3d 460, 468–69 (Tex.App.-Dallas 2006, no pet.). "The same result obtains when more than one legal conclusion independently supports a judgment or ruling, but the appellant challenges only one of those legal conclusions on appeal." *Britton*, 95 S.W.3d at 682; *see Long*, 196 S.W.3d at 468–69. The rules are grounded in the overarching rule that, absent fundamental error, we may not raise a challenge on an appellant's behalf when that challenge is absent from its brief. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.").

**1. Section 1983 Claims for Damages for Violations of Substantive Due Process and Due course of Law[11]**

■ Under these rules, we must overrule the Howeth parties' appellate chal-

---

**10.** The only part of their opening brief that discussed damages consisted of two sentences, without citation to the record or to authority, in their brief's conclusion. Those sentences read, "[The Howeth parties] similarly presented evidence of recoverable damages sustained as a result of its claims for violations of substantive due process and equal protection. This evidence, too, was uncontroverted." This is insufficient to constitute a challenge to the trial court's fact findings concerning damages (10 and 13), particularly because it appears in the brief's

conclusion, rather than as part of its argument. *See* TEX.R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Saudi v. Brieven*, 176 S.W.3d 108, 120 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) (declining to reach, for lack of adequate briefing, appellate challenge lacking citation to authority and having insufficient analysis).

**11.** The best that we can interpret the Howeth parties' lengthy and complex petition, their section 1983 claim based on violations of sub-

lenges to judgment rendered on their section 1983 claims for damages against all appellees based on violations of substantive due process and substantive due course of law for denial of the June and August plat applications, for failure to issue certificates of no action, and for actions post-dating the denial of all plat applications.

■ First, such substantive claims for violations of due process and due course of law required that the Howeth parties have a vested property interest that was affected by the complained-of actions. *See City of Amarillo v. Hancock*, 150 Tex. 231, 234, 239 S.W.2d 788, 791 (1951) (indicating that, for plaintiff to bring self within protection of due process clause, right adversely affected by action of administrative body must be vested property right); *see also Pedraza v. Tibbs*, 826 S.W.2d 695, 697 (Tex.App.-Houston [1st Dist.] 1992, writ

dism'd w.o.j.) ("Vested rights ... are protected by the due process provisions of both the Texas and United States Constitutions.").

Nonetheless, on appeal, the Howeth parties did not timely challenge legal conclusions 8 through 10—that they had no vested property rights at the time of the complained-of actions and that they lacked standing to pursue claims for damages arising out of the plat applications' denial.[12] Likewise, they did not timely challenge fact finding 8—that they had no ownership interest in the Brogden properties at the time that the plats were denied. The failure timely to challenge this finding and these conclusions is fatal to the Howeth parties' section 1983 claims for damages based on violations of substantive due process and due course of law by any appellee.[13] Accordingly, we may not reverse the take-nothing judgment rendered on

stantive due process and due course of law sought only damages, not equitable, declaratory, or mandamus relief. However, we note that the reasoning supporting our disposition of these constitutional claims for damages would equally apply had the Howeth parties alleged section 1983 claims for equitable, declaratory, or mandamus relief.

**12.** In 2002, in a related appeal, this Court held that the Howeth parties had standing to file an application to subdivide and to sue when that application was denied. *See City of Hedwig Village Planning & Zoning Comm'n v. Howeth Invs., Inc.*, 73 S.W.3d 389, 393 (Tex. App.-Houston [1st Dist.] 2002, no pet.). At that time, we noted that the Howeth parties had sued for violations of the Texas Open Meetings Act and for regulatory takings, and with the exception of seeking compensation for the alleged taking, they sought only mandamus, injunctive, and declaratory relief, rather than damages; they did not assert section 1983 claims for damages for violations of due process, due course of law, or equal protection. *See id.* at 392. We thus did not decide whether the Howeth parties had standing to assert section 1983 claims for damages for the denial of their applications or for violations of these constitutional rights, nor

did we decide whether the Howeth parties had vested property rights so as to support claims for violations of due process and due course of law. But even if our prior holding had concerned these matters, the Howeth parties have failed timely to address them, despite the fact that the trial court made findings and conclusions on these matters that were adverse to them.

**13.** For the first time in their reply brief and in a letter brief filed after oral argument, the Howeth parties argue that they have a vested property right and standing sufficient to support their section 1983 claims for damages for violations of substantive due process and due course of law. Appellees noted, in their brief, the absence of any challenge or briefing in the Howeth parties' opening brief concerning fact finding 8 and legal conclusions 8 through 10, followed by a brief discussion of why that finding and those conclusions were nonetheless correct. Despite the discussion of these matters by appellees, the Howeth parties' challenge raised in its reply brief does not solely "address[ ] ... matter[s] in the appellee's brief," as the appellate rules provide for reply briefs, but instead raises wholly new challenges that were not present in their

these claims against any appellee. *See Britton*, 95 S.W.3d at 681.

Second, to the extent that their section 1983 claim for damages for these constitutional violations was based on any actions post-dating the plat applications' denials, the Howeth parties do not challenge the trial court's factual finding 10, that they suffered no damages from the City's actions in connection with the construction of the house on each of the Brogden properties. The Howeth parties have also failed to challenge factual finding 13, that they could have realized a substantial profit had they moved forward with the construction of a single home on each of the Brogden properties and sold each property undivided. Neither do the Howeth parties timely challenge the trial court's legal conclusion 9, that they "lacked standing to pursue claims for damages arising out of the denial of the subject plats." A claim for damages based on violations of substantive due process or due course of law under section 42 U.S.C. section 1983 obviously requires

that damages have occurred and that the claimant have standing to pursue those damages. Accordingly, this is an additional reason that we may not reverse the take-nothing judgment rendered on these claims against any appellee. *See id.*

Third, the trial court concluded, in legal conclusions 1 through 3, that the individual defendants were entitled to four types of immunity—official immunity, qualified immunity, judicial immunity, and immunity under the Federal Volunteer Protection Act—for all of the Howeth parties' causes of action against them, including those asserted under section 1983 for constitutional violations. Nowhere in their opening brief do the Howeth parties expressly or impliedly challenge legal conclusions 1 and 2, in which the trial court determined that the individual defendants were entitled to judicial immunity for all of the Howeth parties' causes of action, necessarily including those under section 1983 for violations of substantive due process and due course of law.[14] Finally, the Howeth parties do not

---

opening brief. *See* TEX.R.APP. P. 38.3. The Howeth parties have not moved this Court to permit amendment of their opening brief's issues, despite appellees' having pointed out the absence of these particular challenges in the Howeth parties' opening brief, nor have the Howeth parties explained why justice requires us to consider issues that they did not timely raise. *See* TEX.R.APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe."). Indeed, the Howeth parties' opening brief is 49 pages long; were we to consider the new issues raised in their reply brief, they would have more than 50 pages in which to assert their opening challenges, without having requested leave to exceed the 50–page limit established by the Texas Rules of Appellate Procedure. *See* TEX.R.APP. P. 38.4. Under these circumstances, we do not consider the new, substantive challenges that the Howeth parties belatedly assert in their reply brief and in their post-argument letter brief. *See Krumb v. Porter*, 152 S.W.2d 495, 496–97 (Tex.Civ.App.-San Antonio 1941, writ ref'd) ("Assignments of error must be set forth in appellant's original

brief. Assignments contained in a reply brief cannot be considered, except perhaps in exceptional cases."); *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 n. 18 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (declining to consider substantive arguments raised by appellants for first time in reply brief); *accord Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.-Dallas 2006, pet. denied) ("The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs but not raised by the appellant's original brief.").

14. The Howeth parties' opening brief, even construed liberally, can reasonably be construed as raising challenges to only three of the four immunities on which the lower court based its judgment: official immunity, qualified immunity, and, in one short sentence in a footnote, immunity under the Federal Volunteer Protection Act. But their brief's argument does not address, expressly or impliedly, the fourth legal basis of judicial immunity; likewise, there is simply no citation to any

attack factual findings 3 and 4, that the only actions that the individual defendants took with regard to the Howeth parties or their plats was to vote on their plats at the pertinent Commission meetings (all individual defendants) or to refuse to issue certificates of no action (White), or legal conclusion 1, that plat approval is a quasi-judicial function and that individual planning and zoning commission members who vote on plats are acting in a quasi-judicial capacity. The Howeth parties' failure to attack these findings and conclusions is fatal to their challenge to the judgment rendered on their section 1983 claim for damages against the individual defendants for these alleged constitutional violations.

### 2. Section 1983 Claims for Damages for Violations of Equal Protection

■ Because of the Howeth parties' failure timely to challenge on appeal key fact findings and legal conclusions, we must also overrule their appellate challenges to judgment rendered on their section 1983 claims for damages against all appellees based on violations of equal protection for the denial of the June and August plat applications, for failure to issue certificates of no action, and for actions post-dating the denial of all plat applications.

First, as for the equal protection claim for damages against the individual defendants, nowhere in their opening brief do the Howeth parties expressly or impliedly challenge legal conclusions 1 and 2, in which the trial court determined that the individual defendants were entitled to judicial immunity for all of the Howeth parties' causes of action, necessarily including those claims for violations of equal protection. Nor do they challenge factual findings 3 and 4, that the only actions that the individual defendants took with regard to the Howeth parties or their plats was to vote on their plats at the pertinent Commission meetings (all individual defendants) or to refuse to issue certificates of no action (White), or legal conclusion 1, that plat approval is a quasi-judicial function and that individual planning and zoning commission members who vote on plats are acting in a quasi-judicial capacity. The Howeth parties' failure to attack these findings and conclusions is fatal to their challenge to the judgment rendered on their equal protection claim against the individual defendants. *See id.* We thus cannot reverse the take-nothing judgment rendered on the Howeth parties' equal protection claims against the individual defendants. *See id.*

Second, the Howeth parties do not challenge the trial court's factual finding 10, that they suffered no damages from the City's actions in connection with the construction of the house on each of the Brogden properties, or factual finding 13, that they could have realized a substantial profit had they moved forward with the single homes' construction and sold each property undivided. An equal protection claim seeking monetary damages under section 42 U.S.C. section 1983 requires that damages have occurred. As for their equal protection claim against the City and the Commission for damages based on the denial of all plat applications and the failure to issue certificates of no action, the How-

judicial-immunity authority in the opening brief. Nonetheless, for the first time in their reply brief, the Howeth parties assert challenges to the trial court's legal conclusions concerning judicial immunity for the individual defendants. The Howeth parties have not moved to permit amendment of their opening brief's issues, nor have they explained why

justice requires us to consider this particular issue that they did not timely raise. *See* TEX. R.APP. P. 38.7. For the reasons stated in footnote 13, above, we hold that the challenge to the trial court's legal conclusions concerning judicial immunity is thus raised belatedly and will not be considered. *See, e.g., Yazdchi,* 177 S.W.3d at 404 n. 18.

eth parties have not timely challenged the trial court's fact finding 13, concerning damages, and its legal conclusion 9, that they "lacked standing to pursue claims for damages arising out of the denial of the subject plats." It is fundamental that one seeking to recover damages have standing to recover the damages that he seeks. *See Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999) (analyzing whether spouse or husband's bankruptcy estate had standing to pursue various claims for damages). The Howeth parties' failure timely to attack these findings and this conclusion is fatal to their challenge to the judgment rendered on their equal protection claim against the City. *See id.* We thus cannot reverse the take-nothing judgment rendered on the Howeth parties' section 1983 claims for damages against any appellee for violations of equal protection. *See id.*

### E. Summary

In sum, for the reasons set forth above, we may not reverse the judgment to the extent that it disposed of the following causes of action:

1. for violation of the Texas Open Meetings Act;
2. for tortious interference with contract (against all appellees);
3. for violations of procedural due process and due course of law (against all appellees);
4. for damages, under section 1983, for violations of substantive due process and due course of law (against all appellees);
5. for damages, under section 1983, for violations of equal protection (against all appellees).

Accordingly, with respect to the individual defendants, there are no claims on which we may reverse the judgment. With respect to the City, the Commission, and White in his official capacity, the only claims or requests for relief that we may

consider when reviewing the Howeth parties' appellate issues are those (1) for writ of mandamus, injunctive relief, and declaratory judgment relating to the refusal to issue certificates of no action and the denial of the June preliminary plat applications (issue one) and (2) to declare City ordinance section 16–38(c) void for being unconstitutionally vague, either facially or as applied (issue three). *See* Code of Ordinances, City of Hedwig Village § 16–38 (Ord. No. 345, § 3.13, 4–11–91). We overrule issue two, concerning section 1983 claims for damages for violations of substantive due process, substantive due course of law, and equal protection, in its entirety.

### Standard of Review

The trial court entered fact findings and legal conclusions. A judgment "may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." TEX.R. CIV. P. 299.

Again, because the Howeth parties do not explain under any of their issues which fact findings or legal conclusions they are challenging, we have attempted to glean from the substance of their appellate arguments which fact findings and legal conclusions they challenge. *See Gennedy*, 125 S.W.3d at 691; *see also* TEX.R.APP. P. 38.1(e), 38.9; *Sterner*, 767 S.W.2d at 690. Given the way that they have phrased their appellate arguments, we further construe the Howeth parties to have raised legal-sufficiency challenges to the fact findings that they have implicitly attacked.

We review legal conclusions *de novo. Gennedy,* 125 S.W.3d at 691. Regarding fact findings, "[w]hen, as here, we have a complete reporter's record on appeal, we review the trial court's fact findings under the same standards for legal sufficiency as govern the review of jury findings." *Id.* As with challenges to jury findings, "[w]hen the complaining party challenges the legal sufficiency of the evidence underlying an adverse finding on which it had the burden of proof, the party must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue." *Id.* at 692. "We employ a two-part test in reviewing such a challenge." *Id.* "We first look for evidence supporting the finding, ignoring all evidence to the contrary." *Id.* "If there is no evidence supporting the finding, we then examine the entire record to see if the contrary proposition is established as a matter of law." *Id.* We apply this standard of review to the Howeth parties' legal-sufficiency challenges to the court's fact findings on the elements of their claims.

To determine whether there is some evidence to support a fact finding, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). If more than a scintilla of evidence supports the fact finding, we must uphold it. *See id.* More than a scintilla of evidence exists if the evidence " 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (quoting *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)). Conversely, evidence that is " 'so weak as to do no more than create a mere surmise' " is no more than a scintilla and, thus, no evidence. *Id.* (quoting *Kindred v. Con/Chem., Inc.,* 650 S.W.2d 61, 63 (Tex.

1983)). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.... [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable [fact finders] could, and disregard contrary evidence unless reasonable [fact finders] could not." *City of Keller,* 168 S.W.3d at 827; *accord Chubb Lloyd' Ins. Co. of Tex. v. H.C.B. Mech., Inc.,* 190 S.W.3d 89, 92 (Tex.App.-Houston [1st Dist.] Dec. 8, 2005, no pet.).

The trial court in a bench trial is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *City of Keller,* 168 S.W.3d at 819. Because it is the province of the trial court in a bench trial to resolve conflicting evidence, we must assume that it resolved all conflicts in accordance with its fact findings. *Id.* at 819–20.

## Challenges Concerning the June Preliminary Plat Applications

In part of issue one, the Howeth parties argue that the trial court erred in concluding that they were not entitled to mandamus, injunctive, or declaratory relief to obtain certificates of no action from the Commission for the June preliminary plat applications because the Commission did not rule on those applications within 30 days. In the remainder of issue one, the Howeth parties alternatively argue that the trial court erred in concluding that they were not entitled to declaratory relief because "[t]he City simply denied the June 2000 [preliminary] plat [applications] for arbitrary and capricious reasons."

### A. The Law Relating to Plat Approval

 "Plat approval, like zoning, is an exercise of the police power." *City of*

*Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex.1985). "The police power is a grant of authority from the people to their governmental agents 'to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety.'" *Id.* (quoting *Lombardo v. City of Dallas*, 124 Tex. 1, 11, 73 S.W.2d 475, 479 (1934)).

> The purpose of plat approval is to ensure that subdivisions are safely constructed and to promote the orderly development of the community. Plat approval protects future purchasers from inadequate police and fire protection, inadequate drainage, and insures sanitary conditions. Public health, safety, and morals are general public interests.

*Id.*

■ Furthermore, "[i]n deciding whether to approve or disapprove a proposed plat the planning commission must interpret and construe the city plan, applicable ordinances and state statutes to determine whether the proposed plat complies with these laws." *Id.* at 303. As one commentator has explained:

> [T]he Texas subdivision enabling act makes what appears to be a direct grant of undefined police power to the governing body to enact subdivision regulations, *while leaving local municipal planning commissions free to formulate standards used in reviewing approval of plats of new subdivisions . . . .*

*John Mixon & Justin Waggoner, The Role of Variances in Determining Ripeness in Takings Claims Under non-Zoning Ordinances & Subdivision Regulations of Tex-* *as Municipalities*, 29 ST. MARY'S L.REV. 765, 779 (1998) (emphasis added) (footnotes and citations omitted). For these reasons, "plat approval or disapproval is a quasi-judicial exercise of the police power." *City of Round Rock*, 687 S.W.2d at 303.

■ "[P]lat approval is a discretionary function that only a governmental unit can perform." *Id.; accord Woodson Lumber Co. v. City of College Station*, 752 S.W.2d 744, 747 (Tex.App.-Houston [1st Dist.] 1988, no writ). Nonetheless, in situations in which the plat applicant "has done all that the statutes and law demands," the approval of the plat "becomes a mere ministerial duty. . . ." *City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923, 927 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.) (applying same rule to planning commission's denial of building permit); *cf. Medina County Comm'rs Court v. Integrity Gr., Inc.*, 21 S.W.3d 307, 309 (Tex.App.-San Antonio 1999, pet. denied) ("Under section 232.002 of the Local Government Code, the authority of the commissioners court to approve subdivision plats is not discretionary if the plat meets the statutory requirements set forth in section 232.001.").[15]

■ Mandamus will lie for the violation of this "mere ministerial duty." That is, when a planning commission, "in its construction of the law, deprives a citizen of an unquestionable legal right and there is no other adequate remedy, the court having power to issue mandamus may review the matter." *Unitarian Church of Corpus Christi*, 436 S.W.2d at 927; *Medina County Comm'rs Court*, 21 S.W.3d at 309 ("A writ of mandamus will

---

15. Local Government Code section 232.002(a) uses mandatory language akin to that in the pertinent portions of Local Government Code chapter 212:

> The commissioners court of the county in which the land is located must approve, by an order entered in the minutes of the court, a plat required by Section 232.001. TEX. LOC. GOV'T CODE ANN. § 232.002(a) (Vernon 2005).

issue to compel a public official to perform a ministerial act. An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion.") (citation omitted).

For this reason, one's remedy for a planning commission's arbitrary or capricious denial of a plat application—or of a certificate of no action under the 30–day rule of Local Government Code section 212.009(a) and (d)—is generally to seek mandamus relief or a mandatory injunction in the trial court. *See Woodson Lumber Co. v. City of College Station,* 752 S.W.2d 744, 747 (Tex.App.-Houston [1st Dist.] 1988, no writ) ("If a landowner believes the City's action is arbitrary, then it may obtain relief by mandamus or mandatory injunction requiring the City to approve the plat."); *see also Myers v. Zoning & Planning Comm'n of the City of W. Univ. Place,* 521 S.W.2d 322, *passim* (Tex. App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) (considering appeal from denial of mandamus to compel zoning and planning commission's issuance of certificate of no action on submitted plat); *Kirschke v. City of Houston,* 330 S.W.2d 629, 631, 634 (Tex. Civ.App.-Houston 1959, writ ref'd n.r.e.) (noting in dictum that mandamus or mandatory injunction may be sought to compel city to issue building permits), *disapproved on other grounds by City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978). Declaratory judgment has also been sought as a remedy. *See Unitarian Church of Corpus Christi,* 436 S.W.2d at 925 (noting that declaratory judgment was sought).

## B. The Relevant Texas Local Government Code Provisions

Chapter 212 of the Texas Local Government Code provides that the owner of a tract of land within city limits or in its extraterritorial jurisdiction who subdivides the tract must "have a plat of the subdivision prepared." TEX. LOC. GOV'T CODE ANN. § 212.004(a) (Vernon 1999). Section 212.004 then provides that, to be recorded, the plat must (1) describe the subdivision by metes and bounds; (2) "locate the subdivision with respect to a corner of the survey or tract or an original corner of the original survey of which it is a part"; and (3) state the dimensions of the subdivision and of various items within the tract that are to be dedicated to public and other limited uses. *Id.* § 212.004(b) (Vernon 1999). Section 212.004 also requires that the owner or proprietor of the tract (or that person's agent) acknowledge the plat in the manner required for the acknowledgment of deeds. *Id.* § 212.004(c) (Vernon 1999). The statute further provides that the plat must be filed and recorded with the county clerk of the county in which the tract is located and that certain filing and recording provisions of the Texas Property Code apply. *Id.* § 212.004(d), (e) (Vernon 1999). A person desiring approval of a plat must apply to, and file a copy of the plat with, the municipal planning commission. *Id.* § 212.008 (Vernon 1999). "The municipal authority responsible for approving plats must approve a plat or replat that is required to be prepared under this subchapter and that satisfies all applicable regulations." *Id.* § 212.005 (Vernon 1999).

"The municipal authority responsible for approving plats shall act on a plat within 30 days after the date the plat is filed. A plat is considered approved by the municipal authority unless it is disapproved within that period." *See id.* § 212.009(a). We refer to this rule as "the 30–day rule." The same statute further provides that "if the municipal authority responsible for approving plats fails to act on a plat within the prescribed [30–day] period, the authority on request shall issue a certificate stating the date that plat was filed and that

the authority failed to act on the plat within that period." *Id.* § 212.009(d) (Vernon 1999). The applicant may then use the certificate of no action in lieu of the municipal authority's endorsement of approval. *See id.*

## C. The Local Ordinances

Chapter 16 of the City's Code of Ordinances concerns platting of property. Within chapter 16, plats are divided into preliminary and final plats. Code of Ordinances, City of Hedwig Village § 16–2 (Ord. No. 345, § 1.03, 4–11–91). A "preliminary plat" is "[a] map or drawing of a proposed subdivision prepared in accordance with the provisions of this chapter, illustrating the features of the development for review and preliminary approval by the Commission, but not suitable for recording with the County Clerk of Harris County." *Id.* A "final plat" is "[a] complete and exact subdivision plan prepared in conformity with the provisions of this chapter and in a manner suitable for recording with the County Clerk of Harris County." *Id.*

Under chapter 16, it is unlawful for anyone to subdivide any tract, lot, or parcel of land within city limits "unless and until a preliminary and final plat of such subdivision has [sic] been approved in accordance with the terms of this chapter." Code of Ordinances, City of Hedwig Village § 16–13(a) (Ord. No. 345, § 1.04, 4–11–91). The preliminary plat accompanying a preliminary-plat application must include, among other things, the property's legal description, together with the County name and the survey and abstract number; reference "to at least one established corner of a nearby recorded subdivision or the nearest public street right-of-way intersection"; and the location of all building setback lines within the plat boundaries. Code of Ordinances, City of Hedwig Village §§ 16–12, 16–13(b), (f), (q) (Ord. No. 345, §§ 2.02, 2.03, 4–11–91). The final plat accompany-ing a final-plat application must incorporate all preliminary-plat requirements and must also, among other things, reflect any previously imposed conditions and requirements of final approval and must contain all engineering and surveying data in sufficient form and building lines and easements. Code of Ordinances, City of Hedwig Village §§ 16–14, 16–15(c), (e), (h) (Ord. No. 345, §§ 2.04, 2.05, 4–11–91). The chapter further provides as follows:

The Commission shall review each plat submitted to it on a preliminary basis and upon a final basis. The Commission shall approve any plat if it is in compliance with the provisions of this chapter and other rules and regulations as may have been or may be adopted by the City Council governing plats and/or the subdivision of land. Upon the receipt of a plat, the Commission's authorized actions are as follows:

(a) Grant preliminary approval or preliminary approval with conditions.

(b) Defer preliminary action until the next regular meeting.

(c) Grant final approval, if in conformance with the conditions of preliminary approval or final approval subject to additional conditions.

(d) Disapprove any plat, either preliminary or final, if the Commission determines that it fails to comply with the policies, standards, or requirements contained in this chapter or other rules and regulations as may have been or may be adopted by the City Council governing plats and/or the subdivision of land.

Code of Ordinances, City of Hedwig Village § 16–18 (Ord. No. 345, § 2.08, 2.05, 4–11–91).

## D. The Howeth Parties' Challenge Based on the 30–Day Rule

■ In the first part of issue one, the Howeth parties argue that the trial court erred in concluding that they were not entitled to mandamus or injunctive relief to obtain certificates of no action from the Commission for the June preliminary plat applications because the Commission did not rule on those applications within 30 days.[16] They also argue that the trial court erred in rendering a take-nothing judgment on their request for a declaration of "their rights to obtain a Certificate of no Action ... to proceed with recording the platted subdivision of each property" and that "all actions taken by the COMMISSION at the August 2, 2000 meeting are void in light of the COMMISSION's failure to proceed [sic] the 30 day time period required by state law." By this portion of issue one, we deem the Howeth parties to challenge legal conclusions 22, 23, 24, and 25—each of which concern whether preliminary plat applications that are not ruled on within 30 days and that are not in recordable form are approved by operation of law[17]—and fact finding 11, which supported those conclusions.[18]

The parties disagree as to whether the 30–day rule applies to all plats, both preliminary and final, or only to final plats. Section 212.009 does not distinguish between preliminary and final plats—indeed, appellees admit that such a distinction is "not specifically contemplated" by the statute. Chapter 212 defines a plat only as including a replat. *See* TEX. LOC. GOV'T CODE ANN. § 212.001(2) (Vernon 1999). The parties disagree how a two-tier plat-approval process like the City's fits into the 30–day rule.

It is undisputed that the June preliminary plats lacked the owners' acknowledg-

---

16. The Howeth parties do not complain of the denial of their August preliminary and final plat applications anywhere under issue one. Rather, they challenge the denial of the August preliminary and final plat applications only under issue two, which related solely to their section 1983 claims for damages for violations of substantive due process, substantive due course of law, and equal protection.

The Howeth parties' live petition alleged more than just section 1983 damages claims for violations of substantive due process, substantive due course of law, and equal protection based on the denial of their August plat applications: the Howeth parties' petition also requested mandamus, declaratory, and injunctive relief for the denial of their August plat applications. But they do not challenge on appeal the denial of their requests for mandamus, declaratory, and injunctive relief for the denial of the August plat applications. And we have already held that the Howeth parties' failure timely to challenge pivotal fact findings and legal conclusions relating to their section 1983 damages claims for violations of their constitutional rights requires overruling their issue two. Accordingly, we may not consider whether the trial court erred in rendering a take-nothing judgment on any of the Howeth parties' claims based on the denial of the August plat applications.

17. The legal conclusions were as follows:

22. The certificate of non-action provision of section 212.009(c) [sic] applies only to subdivision plats that meet all of the state law requirements for filing in the real property records.

23. The [June preliminary plats] did not comply with the state law requirements for filing in the real property records.

24. The Chairman of the Commission [White] had no duty to issue a certificate of non-action regarding the [June preliminary plats].

25. [The Howeth parties] are not entitled to issuance of a writ of mandamus compelling the Chairman of the Commission to issue a certificate of non-action regarding the [June preliminary plats].

18. Fact finding 11 was as follows:

11. The [June preliminary plats] did not include a signature and an original corner.

ment, as required by Local Government Code section 212.004(c), and that they did not "locate the subdivision with respect to a corner of the survey or tract or an original corner of the original survey of which it is a part," [19] as required by Local Government Code section 212.004(b). Indeed, the trial court expressly found as much in fact finding 11: The June preliminary plats "did not include a signature and an original corner." Nor is it disputed that the June plats were preliminary, as contemplated by City code section 16–13; that they did not comply with all requirements for preliminary plats in that they lacked building setback lines; and that they also lacked certain requirements for final plats, as established by City code section 16–15. *See* Code of Ordinances, City of Hedwig Village §§ 16–13, 16–15 (Ord. No. 345, §§ 2.03, 2.05, 4–11–91).

What the parties dispute is whether the filing of a preliminary plat—which did not comply with section 212.004's requirements, did not meet all requirements of the City's ordinance for preliminary plats, and did not include matters that the City's ordinance required for final plats—triggered section 212.009(a)'s 30–day rule, when section 212.009(a) does not distinguish between preliminary and final plats.

We do not consider this issue in a complete vacuum. In 1975, this Court issued an instructive opinion in *Myers*, 521 S.W.2d 322. The *Myers* Court considered chapter 212's predecessor, former Texas Revised Civil Statute 974a,[20] which contained a materially similar 30–day rule and similar rules concerning acknowledgment and other recording requirements for

plats. *See id.* at 324–25. The *Myers* Court did not reveal whether the municipality had a two-tier plat-approval procedure like the City's here, did not state whether the subdivision applicant had filed a preliminary plat, and did not base its holding on the distinction between a preliminary and final plat. Nonetheless, its holding is instructive.

The *Myers* Court held that section 212's predecessor contemplated that, for a court to enforce the 30–day rule, a plat filed with the municipal planning commission (as part of the plat-approval process) had to be in the form required for filing with the county clerk. *Id.* at 325. That is, in order for the 30–day rule to be judicially enforced by mandamus, the plat filed with the planning commission has to, among other things, be acknowledged and locate the subdivision with respect to an original corner of the original survey of which the tract is a part. *Id.; see* TEX. LOC. GOV'T CODE ANN. § 212.004(b), (c) (providing that plats must be acknowledged and must meet three requirements, including locating subdivision with respect to original corner of original survey, to be recordable). Because the plat under consideration was not acknowledged and did not locate the subdivision with respect to an original corner of the original survey, the plat

> could not be recorded by the court clerk if the City Planning Commission is required to furnish the certificate showing the date on which the copy was filed with the Commission and the fact that the Commission failed to take action thereon within thirty days. The owner

---

19. The relevant City ordinance had a similar requirement for preliminary plats: that they include reference "to at least one established corner of a nearby recorded subdivision or the nearest public street right-of-way intersection." Code of Ordinances, City of Hedwig Village § 16–13(b) (Ord. No. 345, § 2.03, 4–11–91).

20. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 5, 1973 Tex. Gen. Laws 883, 995, *repealed by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306.

of land must file with the county clerk a plat which has received approval of the city planning commission. Any material change, addition, or deletion to the plat would be unauthorized and would constitute a new plat which had not been approved by the city planning commission.

*Id.* The *Myers* Court concluded, "Since in our view the plat which petitioner desires to have recorded does not comply with the law entitling it to recording, an order requiring the City Planning Commission to issue the desired certificate would be useless," making mandamus improper. *Id.* at 326. The *Myers* Court accordingly affirmed the trial court's denial of the mandamus that the landowner had sought. *Id.*

*Myers* stands for the proposition that a court will not, by mandamus, order a planning commission to issue a certificate of no action under section 212.009(d) when the commission does not act within 30 days on a plat that does not meet Texas Local

Government Code chapter 212's requirements for recording.[21] *See id.* Although *Myers* did not base its holding on a "preliminary versus final plat" distinction, its holding determines the outcome here. Under *Myers,* if a plat is not in recordable form, whether the plat be styled preliminary or final, a court may not enforce the 30–day rule by mandamus to require issuance of a certificate of no action. *See id.*

The Howeth parties argue that *Myers* is not controlling because, here, the "only evidence" elicited was that the June preliminary plats "did comply with the recording statute, and would be accepted in the real property records" in their preliminary form. This is not what the cited record shows, however. Instead, the record, viewed in the required light, shows that the June preliminary plats lacked the owners' acknowledgment and that they did not, on their face, locate the subdivision with respect to the required corner.[22] Also, the Howeth parties' expert did not testify that a plat lacking an

**21.** At least one commentator has interpreted *Myers* more broadly: "a subdivision plat not showing the required survey information and not acknowledged *is not automatically approved* [under section 212.009(a) ] after thirty days following submission to the city if no action [is] taken, as would otherwise be the case for validly prepared subdivision plats." DAVID B. BROOKS, 23 TEX. PRAC. SERIES: MUNICIPAL LAW & PRAC. § 21.03 (1999) (emphasis added). This commentary implies that, under *Myers,* the 30–day rule is not even triggered if the plat does not meet chapter 212's requirements for recording; that is, a planning commission does not act arbitrarily and unreasonably in denying the requested certificate of no action under those circumstances. Because we can base our determination on the narrower rule cited above, we express no opinion as to whether *Myers* stands for this broader proposition.

**22.** The June preliminary plats recited that "the plat boundary corners have been tied to the nearest survey corner and to the City of Houston survey marker system," but did not show the referenced survey corner on the plat's face. The Howeth parties' expert opined that because section 212.004(b) re-

quired only that a platted subdivision be "locate[d]" with respect to the required corner, rather than that the plat "show" the subdivision's location relative to that corner, the June preliminary plats complied with this aspect of section 212.009(b). However, the *Myers* Court equated the verb "locate" with "show," indicating that the statutory requirement that the plat "locate" the platted area "with respect to an original corner of the original survey of which it is a part" meant that the plat actually had to show, on its face, the location of the land with respect to that corner. *See Myers v. Zoning & Planning Comm'n of the City of W. Univ. Place,* 521 S.W.2d 322, 325 (Tex.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) ("The petition for mandamus under consideration does not allege that the copy of the plat filed with the City Planning Commission *shows* the location of the land with respect to an original corner of the original survey of which it is a part.... A copy of the plat is attached to the petitioner's pleading and *does not show* the original corner of the original survey of which the land is a part ....") (emphasis added). The June preliminary plats did not do this. Accordingly, they did not comply with section

acknowledgment could be recorded; rather, he testified that the acknowledgment was commonly added after the Commission's approval, *but before recording.*

■ Alternatively, the Howeth parties argue that if the 30–day rule cannot be enforced for plats that do not meet chapter 212's recording requirements, the purpose of the rule—to prevent municipalities from sitting endlessly on plat applications—will be thwarted. Nonetheless, *Myers* has been the law of this Court for 33 years. We do not overrule such long-settled precedent unless there is an extremely compelling reason to do so, and we find no such reason here. *See Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000) (*"Stare decisis* has its greatest force in statutory construction cases. Adhering to precedent fosters efficiency, fairness, and legitimacy. More practically, it results in predictability in the law, which allows people to rationally order their conduct and affairs.") (citations omitted). Moreover, the *Myers* Court's holding has been followed by the Fourteenth Court of Appeals. *See Lacy v. Hoff,* 633 S.W.2d 605, 611 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). Were we to depart from *stare decisis* to overrule *Myers,* we could cause a split between sister courts of concurrent appellate jurisdiction, which we are also disinclined to do without extremely compelling reasons. We further decline to follow the authority from other jurisdictions on which the Howeth parties rely to the extent that that authority conflicts with *Myers.*[23]

Sufficient evidence supports the trial court's fact finding that the June preliminary plats lacked "a signature and an original corner," and the trial court thus did not err in concluding that the plats did not meet the statutory requirements for recording found in section 212.004(b) and (c). Accordingly, the trial court did not err in refusing to order the Commission to issue certificates of no action on the June preliminary plats, either by mandatory injunction or by writ of mandamus. For the same reasons, we also hold that the trial court did not err in rendering a take-nothing judgment on the Howeth parties' request for a declaration of "their rights to obtain a Certificate of no Action ... to proceed with recording the platted subdivision of each property" and that "all actions taken by the COMMISSION at the August 2, 2000 meeting are void in light of the COMMISSION's failure to proceed [sic] the 30 day time period required by state law." What our precedent does not allow us to enforce by mandamus or injunction, we will not enforce by declaration, particularly when that declaration might itself need to be enforced by injunctive relief. Because of these holdings, we further hold that the trial court did not err in refusing to enter injunctions concerning the issuance of building permits based on the June preliminary plats.

We overrule this portion of issue one.[24]

212.004(b)'s requirement that a plat "locate the subdivision with respect to a corner of the survey or tract or an original corner of the original survey of which it is a part." TEX. LOC. GOV'T CODE ANN. § 212.004(b) (Vernon 1999).

Howeth parties rely because, in them, the municipal agency was considering a final plat, the statute expressly provided for deemed approval for preliminary plats, or the case did not concern a deemed-approval statute for plat applications.

**23.** *See Savage v. Town of Rye,* 120 N.H. 409, 411, 415 A.2d 873, 875 (N.H.1980); *cf. Pateman III v. Marra,* 525 N.Y.S.2d 533, 535, 138 Misc.2d 807, 810 (N.Y.Sup.Ct.1988) (plat not in final form for lack of septic approval). We distinguish the remaining cases on which the

**24.** We think it important to state what our holding does not concern. Because *Myers* prevents enforcement of the 30–day rule with respect to the June preliminary plats for their not being in recordable form, regardless of whether they were preliminary or final, we do

### E. The Howeth Parties' Challenge Based on the Merits of the June Preliminary Plat Applications

■ In a final paragraph under issue one, the Howeth parties argue alternatively:

Even putting aside the mandatory thirty-day rule and statutory approval brought about by the City's failure to deny [the Howeth parties'] plats as required by § 212.009, [the Howeth parties'] June 6, 2000 [preliminary] plat applications facially met all relevant requirements for approval. The commission was expressly advised of this fact at the August 2, 2000 meeting by City Attorney Alan Petrov and City Building Official Paul Addington. The City simply denied the June 2000 [preliminary] plat [applications] for arbitrary and capricious reasons. Accordingly, [the Howeth parties are] entitled to declaratory judgment giving the municipal approval required for filing plats in the county real property records.

(Record citations omitted.) This is the sole discussion of this portion of issue one: there is no further analysis, nor is there citation to any legal authority. This particular argument is thus inadequately briefed and will not be considered. *See* TEX.R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Saudi v. Brieven*, 176 S.W.3d 108, 120 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (declining to reach, for lack of adequate briefing, appellate challenge lacking citation to authority and having insufficient analysis).

■ Moreover, there was evidence that the June preliminary plats lacked building setback lines, as required by the City ordinance for preliminary plats, which undermines the Howeth parties' appellate assertion that the "June 6, 2000 [preliminary] plat applications facially met all relevant requirements for approval." [25] *See* Code of Ordinances, City of Hedwig Village § 16–13(q) (Ord. No. 345, § 2.03 4–11–91). Likewise, Petrov and Addington, whose statements the Howeth parties' reference in the one sentence quoted above, stated only that the June preliminary plat applications met all of the requirements for lot size, width, and depth, not that they met "all relevant requirements for approval." [26] Additionally, as set out in

---

not reach the issue of whether a court may enforce the 30–day rule if an applicant submits a preliminary plat in recordable form for consideration by the municipal authority. Nor do we decide whether any recordable-form preliminary plat that might be deemed approved by operation of section 212.009(a) obviates the need for approval of a final plat under a two-tier plat-application ordinance like the City's.

**25.** The trial court did not expressly find that the June preliminary plats lacked building setback lines. Nonetheless, the trial court concluded that the Commission's denial of the June preliminary plat applications had a rational basis and was supported by substantial evidence, and it made other fact findings relevant to those conclusions. The June preliminary plats' defect of lack of a setback line is supported by the evidence; is relevant to the

Howeth parties' request for mandamus, injunctive, and declaratory relief concerning the August 2 denial of the June preliminary plat applications, on which the trial court made other fact findings; and supports the trial court's legal conclusions that the Commission's denial of the June preliminary plat applications had a rational basis and was supported by substantial evidence. *See* TEX.R. CIV. P. 299.

**26.** Petrov told the Commission only that he understood that the preliminary plat applications "met all of [the City's] requirements for *lot size, width, and depth* " (emphasis added), but he then immediately qualified that statement by stating "the problem was that Section 16–38 ... said 'unless unavoidable, key or flag-shaped lots shall not be allowed.' " Similarly, Addington told the Commission only that the June preliminary plat applica-

the background section, Petrov, the Commission's legal counsel, advised the Commission that it had discretion to interpret the term "unavoidable" and that he saw two reasonable interpretations of that section—one of which was how the Commission interpreted the term—even though he believed that the other interpretation was the more logical. Furthermore, as we explain below in our discussion of the Howeth parties' constitutional vagueness challenge, the interpretation of "unavoidable" that the Commission chose is reasonable under the ordinance's plain language. And finally, the Commission's written ruling explained that "the Commission found that the use of a flag lot ... was not unavoidable as that term [was] interpreted by the Commission." [27]

The Howeth parties do not analyze or explain under this portion of issue one (1) why the Commission would have acted arbitrarily and capriciously in denying preliminary plat applications that did not meet the setback requirement; (2) why an implied finding that the applications failed to meet the setback requirement could not be made; (3) why this deemed finding, if it could be made, could not support the trial court's legal conclusions and its judgment; or (4) how the Commission would have acted arbitrarily or capriciously in interpreting the term "unavoidable" in one of the two ways that its counsel opined were reasonable, when (as discussed below) the ordinance's plain language would allow that interpretation and when the Commission's written ruling indicated that the

June preliminary plat applications were denied based on that interpretation. Absent fundamental error, we may not make arguments for appellants that the appellants themselves have not made. *See Walling*, 863 S.W.2d at 58.

We thus overrule the remainder of issue one.

### Vagueness

In issue three, the Howeth parties argue that section 16–38 of the City's ordinances is unconstitutionally vague, both facially and as applied to them. Specifically, they argue that the term "unavoidable" used in the ordinance concerning flag lots is vague for giving "unfettered discretion to the Commission" to approve or to reject flag lots. By supplemental legal conclusion, the trial court determined that section 16–38 did not violate the Howeth parties' substantive due process rights for being unconstitutionally vague, either facially or as applied.

### A. The Law Applicable to a Vagueness Analysis

 "We begin our analysis by presuming the statute is constitutional." *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex.2003). "[T]he party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements." *Id.*

 One asserting a facial constitutional challenge bears an especially heavy bur-

---

tions met the City's size and width requirements for lots, that is, the "basic requirements."

27. Likewise, at the August 2, 2000 hearing, White explained that the term unavoidable "had cast confusion on the situation, and as a result, the Commission had to interpret" the term, the only way to do so being to vote "aye or nay on whether it was acceptable." Other

Commission members gave different reasons from those given by White, but there is no briefing under this portion of issue one explaining what effect, if any, multiple reasons would have as against the Commission's written ruling or why those differing reasons would cause the Commission's decision to be arbitrary or capricious when, as discussed further below, the ordinance's plain language supports the Commission's decision.

den: he must show "that the [challenged law] is unconstitutional in every possible application." *In re Commitment of Fisher*, 164 S.W.3d 637, 655 (Tex.2005) (applying same to vagueness challenge). That is, the challenger "must demonstrate that the statute always operates unconstitutionally." *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex.1999).

 "A statute or ordinance is violative of due process and fatally vague when persons regulated by it are exposed to some risk or detriment without fair warning of the nature of the proscribed conduct." *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). "When persons of common intelligence are compelled to guess at a law's meaning and applicability, due process is violated and the law is invalid." *Id.* The values that vague laws offend are two-fold: first, " 'because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly' "; second, " 'if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.' " *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)).

 Nonetheless, " 'statutes are not automatically invalidated as vague simply because difficulty is found in determining whether marginal offenses fall within their language.' " *Signad, Inc.*, 682 S.W.2d at 646 (quoting *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex.1980)). "[N]o more than 'a reasonable degree of certainty can be demanded,' " and this requirement of reasonable certainty " 'does

not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.' " *Id.* (quoting *Sproles v. Binford*, 286 U.S. 374, 393, 52 S.Ct. 581, 587, 76 L.Ed. 1167 (1932), and *Pennington*, 606 S.W.2d at 689). Likewise, "[a] statute is not unconstitutionally vague merely because it does not define words or phrases." *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex.App.-Fort Worth 2005, no pet.). And just because the parties disagree as to a statute's or ordinance's meaning does not mean " 'that we must necessarily guess at its meaning,' " *i.e.*, the existence of that dispute does not necessarily render the law unconstitutionally vague. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 566 (Tex. App.-Tyler 2007, pet. denied) (quoting *Mills v. Fletcher*, 229 S.W.3d 765, 770 (Tex.App.-San Antonio 2007, no pet.)). Furthermore, "[r]egulatory statutes governing business activity are allowed greate[r] leeway than is allowed [sic] criminal statutes in applying the 'fair notice' test. . . ." *Signad, Inc.*, 682 S.W.2d at 646.

## B. The Law Applicable to Interpreting Ordinances

 "Municipal ordinances are interpreted by the same rules of construction that apply to statutes." *SWZ, Inc. v. Bd. of Adjustment of City of Fort Worth*, 985 S.W.2d 268, 270 (Tex.App.-Fort Worth 1999, pet. denied). "Statutory interpretation is a question of law." *Cardinal Health Staffing v. Bowen*, 106 S.W.3d 230, 237 (Tex.App.-Houston [1st Dist.] 2003, no pet.) "Whe[n] the construction of municipal ordinances is involved," as when statutory construction is involved, "the primary duty of this court is to carry out the intentions of the municipal legislative body." *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex.1962). In carrying out this duty, "we begin with the statute's plain language

because we assume that the Legislature tried to say what it meant and, thus, that its words are the surest guide to its intent." *Bowen*, 106 S.W.3d at 237–38. "In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act." *Id.* at 238. "We construe words according to their common usage, unless they have acquired a technical or particular meaning." *Id.* A statute or ordinance is ambiguous when its language "could support more than one reasonable interpretation." *In re Miss. Pac. R.R. Co.*, 998 S.W.2d 212, 217 (Tex.1999).

 "Contemporaneous construction of an ordinance by the agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the ordinance." *SWZ, Inc.*, 985 S.W.2d at 270; *cf.* TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 2005) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: . . . (6) administrative construction of the statute. . . ."). That is, "[i]f . . . the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight." *Calvert v. Kadane*, 427 S.W.2d 605, 608 (Tex.1968).

## C. Discussion

Chapter 16 of the City's ordinances is entitled "Platting of Property." Article III of Chapter 16 is entitled "Design Standards" and generally concerns requirements for plats. Section 16–38, which falls within Article III, is entitled "Lots, general provisions." The stated purpose of section 16–38 is "to provide general overall guidelines for the establishment of individual lots within a subdivision." *See* Code of Ordinances, City of Hedwig Village § 16–38 (Ord. No. 345, § 3.13, 4–11–91). Subsection (c) of section 16–38 provides: "Unless *unavoidable*, key or flag shaped lots shall not be permitted." *Id.* (emphasis added).

 The term "unavoidable" is not defined in the City's relevant ordinances. At the August 2, 2000 Commission hearing, Petrov told the Commission that no case law or legislative history shed light on the term's meaning and that it was thus "in the discretion of" the Commission "to come to an agreement on the definition of" the term. We have likewise found no authority interpreting section 16–38, and the parties have not pointed us to any case interpreting "unavoidable" in the context of subdivision law. The term "unavoidable" is generally defined by dictionary as "unable to be avoided" or "inevitable," which is not particularly helpful to our analysis. *E.g.*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICT. 2053 (2nd ed.).

Against this backdrop, Petrov advised the Commission that he saw two possible definitions of unavoidable: (1) that *development* of the land was otherwise impossible, an interpretation allowing denial of the June preliminary plat applications because there was evidence that the lots could be developed with one home per property, and (2) that *subdivision* of the land was otherwise impossible, an interpretation that could allow approval of the June preliminary plat applications because the evidence was undisputed that neither Brogden property could be subdivided without violating the City's other subdivision requirements unless flag lots were used. Petrov advised that he believed that interpretation (2) was the more logical because "the entire provision was found in the City Code dealing with subdivision of lots." Nonetheless, he advised the Commission that it was in "the Commission's discretion to decide what 'unless unavoidable' meant"

because "it was possible to come to one of two conclusions"; that "courts would defer to an administrative body's interpretation ... provided that those interpretations were not arbitrary and capricious and not out of line with normal, rational thought"; and that whatever conclusion the Commission reached, "a few words should be added to the sections of the Code to provide clarification."

We conclude that the plain language of section 16–38, when read in context, supports two reasonable interpretations of "unavoidable": those two interpretations set out by Petrov at the August 2, 2000 hearing. On the one hand, chapter 16 in general "appl[ies] to all subdivisions of land within the City of Hedwig Village." *See* Code of Ordinances, City of Hedwig Village § 16–1 (Ord. No. 345, § 1.02, 4–11–91) (emphasis added). Considering section 16–38 in light of the chapter's general focus supports the Howeth parties' interpretation because it could demonstrate the ordinance's intent that what must be unavoidable for the use of a flag lot is the ability *to subdivide property* without using a flag lot.

On the other hand, however, section 16–38 itself states that its purpose is "to provide overall guidelines for the establishment of *individual lots within a subdivision.*" *See* Code of Ordinances, City of Hedwig Village § 16–38 (Ord. No. 345, § 3.13, 4–11–91) (emphasis added). That is, the focus of the specific section in which the term "unavoidable" appears is not the subdivision of the piece of property into smaller lots, but is instead the design of the individual lots that are created within the subdivision plat. *See, e.g., id.* § 16–38(a) ("(a) *General Lot Design, Arrangement, Layout.* The general *lot design within any subdivision* shall be based upon the concept that such lots are created and established as undivided tracts of land and that purchasers of such lots can be assured that these tracts of land meet the following basic criteria:...."). Considering section 16–38 in light of the specific section's focus supports the Commission's interpretation because it could demonstrate the ordinance's intent that what must be unavoidable for the use of a flag lot is the ability *to develop* an individual lot, rather than the ability to subdivide a larger piece of property into individual lots in the first place.

Because there are two reasonable interpretations of the term "unavoidable," the term is ambiguous as a matter of law. *See, e.g., In re Miss. Pac. R.R. Co.,* 998 S.W.2d at 217. But this ambiguity does not render section 16–38 constitutionally infirm for vagueness.

First, there are only two reasonable ways to read this ordinance. This is not a situation like that considered in *City of Webster v. Signad, Inc.,* cited by the Howeth parties, in which this Court held that an ordinance referring to "any substantial parts" of a sign was unconstitutionally vague. 682 S.W.2d at 647–48. There, a virtually indefinite number of meanings could be ascribed to the quoted phrase. As we reasoned:

> Parts of a sign may be simultaneously "substantial" and "insubstantial" depending on whether the test used is economic, physical, or functional. If an economic test is used, how expensive must a repair be to rise to the level of "substantial"? If a sign is valued at $30,000, is $1,000 in damage "substantial"? If a physical test is considered, is damage to one pole of a five-pole sign "substantial"? Should "substantial parts" of the sign include other than structural parts? Section B(15) of the Ordinance defines a "sign structure" as "the support, uprights, bracing, and framework of any outdoor advertising sign"; sign panels, readily movable and

changeable, are not defined as a part of the sign structure. Is damage to one or more sign panels therefore to be considered as damage to a "substantial" part of the sign? A sign with broken or inoperative lights is not functional during nighttime hours, although the cost of repairs is small in comparison with the sign's total cost. From a functional perspective, the lights are "substantial parts" of the sign, while from a cost perspective they are not. The same ambiguity arises in numerous similar practical considerations. The potential for ambiguity is shown in the appellant city engineer's testimony. He testified that he considered panels alone to be "substantial parts" of the sign, although they are not defined as part of the "sign structure." He also stated that he gave no consideration to the dollar amounts of damage in determining the substantiality of damage. In the absence of additional guidelines, each successive city engineer must select his own standard for determining what is a "substantial part" of a sign. Operators of outdoor advertising signs receive no fair and adequate notice from section H(2) of the Ordinance as to what sign repairs are permitted or prohibited.

*Id.* An ordinance so vague as to give no notice at all, and to mean virtually anything, is distinguishable from an ordinance that is limited to two reasonable meanings, one of which the agency selects when the issue is presented to it.

"Regulatory statutes governing business activity are allowed greate[r] leeway than is allowed [sic] criminal statutes in applying the 'fair notice' test" and "no more than 'a reasonable degree of certainty can be demanded....'" *Id.* at 646. This ordinance meets that test. It is evident from the record of the August 2, 2000 hearing that the parties both understood that only two interpretations were up for consideration, which were the two put forth by

Petrov. The record demonstrates that the Howeth parties were able clearly to articulate before the Commission why their espoused interpretation was the correct one. They have thus not shown that they lacked fair notice as to what the ordinance's language could require.

■ Second, the City's ordinances give the Commission "all of the powers and responsibilities of a planning commission relating to the approval or disapproval of ... plats ... including, but not limited to, V.T.C.A., Local Government Code Chapter[ ] ... 212 ..." and allows the Commission to interpret any Planning and Zoning Code provision "in the event [its] meaning or intent ... is not plain and obvious...." Planning & Zoning Code, City of Hedwig Village § 302(I)(2) (Ord. No. 276, § 302, 4–24–86); *id.* § 201(9) (Ord. No. 419, 4–11–96). The Texas Supreme Court has likewise stated that "[i]n deciding whether to approve or disapprove a proposed plat *the planning commission must interpret and construe* the city plan, *applicable ordinances and state statutes* to determine whether the proposed plat complies with these laws." *City of Round Rock,* 687 S.W.2d at 303 (emphasis added); *see* TEX. LOC. GOV'T CODE ANN. § 212.010(a) (Vernon 1999) (providing that "[t]he municipal authority responsible for approving plats shall approve a plat if" various criteria are met, including conformance to city's general plan and to any rules adopted by city governing plats and subdivisions). Accordingly, the Commission is empowered to construe ordinances like section 16–38 in order to determine if the submitted plat complies with the law and the City's overall plan. Courts will generally defer to the interpretation of the agency, like the Commission, charged with enforcing an ordinance when that interpretation is reasonable. *See Calvert,* 427 S.W.2d at 608. We have already held that the Commission's interpretation was reasonable under the

ordinance's plain language. This is not a situation in which the Commission adopted an interpretation that was one of an indefinite number of possible interpretations in order to support an arbitrary or capricious enforcement.

In sum, section 16–38 was not unconstitutionally vague as applied to the Howeth parties. Because section 16–38 was not vague as applied to them, it necessarily cannot be facially vague. *See In re Commitment of Fisher,* 164 S.W.3d at 655 (holding that person challenging statute as facially vague must show "that the [challenged law] is unconstitutional *in every possible application.*") (emphasis added). The trial court thus did not err in concluding that section 16–38 did not violate the Howeth parties' substantive due process rights for being unconstitutionally vague, either facially or as applied. The trial court thus further did not err in rendering a take-nothing judgment on the Howeth parties' vagueness challenges.

We overrule issue three.

### Conclusion

We affirm the judgment of the trial court.