Affirmed and Opinion filed February 3, 2009








Affirmed and Opinion filed February 3, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00806-CV

_______________

 

RONALD C. PRIDDY, SAMMY BINGHAM, AND DOUGLAS McGRAW,
Appellants

 

V.

 

 

JOHN V. RAWSON, RICK STEVENS, E.M (LIZ) STEVENS, STEVE
J. SCHIFANI, AND RICHARD DICKSON, Appellees

                                                                                                                                               


On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 23769 *PSO3-A

                                                                                                                                               


 

O P I N I O N








Ronald
C. Priddy (APriddy@), Sammy Bingham (ABingham@), and Douglas McGraw (AMcGraw@) (collectively Aappellants@) appeal the summary judgment granted
in favor of appellees, John V. Rawson (ARawson@), Rick Stevens, E.M. (Liz) Stevens,
Steve J. Schifani (ASchifani@), and Richard Dickson (ADickson@), on appellants= claims of fraud, breach of fiduciary
duty, director liability for deed-restriction violations, and individually owed
assessments.  We affirm.

I.  Background

Wolfe
Airpark is a subdivision of homes and airplane hangars surrounding a small
grass airstrip in Brazoria County.  A portion of the subdivision is located in
the City of Manvel.  Frank Wolfe is the President of Wolfe Airpark, Inc., the
subdivision=s developer.              On January 28, 1981, Wolfe Airpark, Inc. filed
a Declaration of Covenants, Conditions and Restrictions (Athe Declaration@) to govern the subdivision.  This
Declaration addresses, among other things, the owners= property rights, membership and
voting rights, and maintenance assessments.  Every owner of a lot subject to
assessment is a member of the Wolfe Airpark Civic Club (Athe Civic Club@).[1] 
The Civic Club, a non-profit corporation, administers the common areas of the
subdivision.[2]  In addition
to the restrictive covenants, the Civic Club and its Board of Directors are
subject to the provisions of the Texas Non-Profit Corporation Act.[3] 
Priddy, McGraw, and Bingham were members of various boards during the events
giving rise to the underlying suit.  Schifani was elected to the Board in 1998,
Rick and Liz Stevens were elected in 2001, and Rawson was elected in 2002.








The
Declaration defines Wolfe Airpark, Inc., its successors, and assigns as the ADeclarant.@[4]  The Declaration authorizes the
Civic Club=s Board of Directors to charge the Declarant up to ten percent (10%) of
the annual assessment rate applicable to regular lot owners.[5] 
The Civic Club has two classes of voting membership: Class A members, which
include all owners except the Declarant; and Class B member(s), consisting of
the Declarant.  Class A members have one (1) vote for each lot owned, and Class
B members are entitled to three (3) votes for each lot owned.[6]                                                    

On
February 22, 1991, Wolfe Airpark, Inc. conveyed one-hundred (100) undeveloped
lots to Manvel Aviation, Inc. via warranty deed.  The deed contained
conveyancing language covering Athe [] described premises, together with all and singular the
rights and appurtenances thereto in anywise belonging@ to Wolfe Airpark, Inc.  Dickson is
the President of Manvel Aviation.

In April
2003, the Civic Club sued appellants.  In July 2003, appellants filed
counterclaims against the Civic Club.  The Civic Club and appellants filed cross-motions
for partial summary judgment.  In September 2003, the district court denied
both the Civic Club=s and appellants= motions for partial summary
judgment.[7]








In May
2006, appellants filed their Sixth Amended Answer to the Civic Club=s petition in which they also
asserted claims against appellees as third-party defendants.[8] 
Specifically, appellants alleged (1) a failure to pay mandatory assessments,
(2) fraud, (3) breach of fiduciary duty, and (4) director liability for deed
restriction violations.  Appellees moved for summary judgment on appellants= claims.  On September 20, 2006, the
trial court signed an order granting appellees= motion for summary judgment in its
entirety.[9]  On June 25,
2007, the trial signed an order severing appellants= claims against appellees from the
remainder of the suit, thereby rendering the summary judgment in favor of
appellees a final, appealable judgment.  In this appeal, appellants challenge
this summary judgment.

II.  Standard of Review

To be
entitled to traditional summary judgment, a defendant must conclusively negate
at least one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Brown v. Hearthwood II Owners
Ass=n,
201 S.W.3d 153, 159 (Tex. App.CHouston [14th Dist] 2006, pet. denied).  In reviewing a
traditional summary judgment, we examine the entire record in the light most
favorable to the non-movant, indulging every reasonable inference and resolving
any doubts against the motion.  Yancy v. United Surgical Partners Int=l, Inc., 236 S.W.3d 778, 782 (Tex. 2007). 
When a trial court=s order granting summary judgment does not specify the
grounds upon which it was granted, we will affirm the judgment if any of the
theories advanced in the motion are meritorious.  See Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).








A
no-evidence motion for summary judgment must be granted if: (1) the moving
party asserts that there is no evidence of one or more essential elements of a
claim or defense on which the adverse party would have the burden of proof at
trial, and (2) the respondent produces no summary judgment evidence raising a
genuine issue of material fact on those elements.  See Tex. R. Civ. P.
166a(i).  In reviewing a no-evidence summary judgment, we apply the same
standard, but consider only the evidence contrary to the motion.  See City
of Keller v. Wilson, 168 S.W.3d 802, 825 (Tex. 2005).  When the motion for summary
judgment presents both no‑evidence and traditional grounds, generally
appellate courts review the no‑evidence grounds first.  See Kalyanaram
v. Univ. of Tex. Sys., 230 S.W.3d 921, 925 (Tex. App.CDallas 2007, pet. denied) (reviewing
propriety of summary judgment under no‑evidence standards of rule 166a(i)
where motion presented both no‑evidence and traditional grounds) (citing Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004)). 

III.  Analysis

There
are three related arguments concerning the interpretation of the restrictive
covenants at issue in this case: (1) whether Manvel assumed the status of
Declarant upon conveyance of the 100 undeveloped lots; (2) whether Manvel owes
assessments; and (3) whether Manvel was entitled to vote at the Civic Club=s annual board elections.  Appellants
posit that Manvel did not become the Declarant upon conveyance of the
undeveloped lots.  Thus, appellants argue Manvel should have been assessed at a
higher rate and, having failed to pay the higher assessment amount, Manvel=s voting rights were suspended. 
Because many of the issues in the brief do not bear on what is dispositive of
the appeal, we will confine our discussion to those issues germane to our
disposition.  See Tex. R. App. P.
47.1 (requiring court of appeals=s opinion to be as brief as
practicable but to address every issue raised that is necessary to final
disposition).

As a
preliminary matter, we note that, although appellants frame their arguments as
two issues, in both instances, they complain that the trial court erred in
granting summary judgment on their claims.  Accordingly, we address the issues
together as they relate to appellants= claims.








In their
Sixth Amended Answer and Counterclaim, appellants alleged claims of fraud and
breach of fiduciary duty against all of the appellees.  Against Rawson,
Schifani, Rick Stevens, and Liz Stevens (collectively Athe appellee directors@), appellants also asserted a claim
for director liability for deed restriction violations.  Against Dickson,
individually, and Rawson, individually, appellants alleged a failure to pay
mandatory monthly assessments.  In their summary-judgment motion, appellees
asserted no-evidence as well as traditional summary-judgment grounds.  First,
they argued that the appellee directors were protected under the Texas
Non-Profit Corporation Act and that appellants failed to present any evidence
of the three elements necessary to impose liability upon them.  Appellees also
contended that there was no evidence of at least one of the elements of
appellants= claims of (1) fraud, (2) breach of fiduciary duty, (3) director
liability for deed restriction violations, and  (4) assessments owed
individually by Dickson and Rawson.  Appellees also sought a traditional
summary judgment on (1) estoppel grounds, and (2) the issue of assessments with
regard to Rawson, individually.  We begin by reviewing the no-evidence grounds
presented.  See Ridgway, 135 S.W.3d at 600.

A.        The Appellee Directors C Rawson, Schifani, Rick Stevens, and
Liz Stevens

1.         Texas Non-Profit
Corporation Act

Appellants
contend the trial court erred in granting a no-evidence summary judgment to the
appellee directors based on the statutory protection afforded by the Texas
Non-Profit Corporation Act (Athe Act@).  See Tex. Rev. Civ. Stat. Ann. art. 1396-1.01B11.01 (Vernon 2003 & Supp.
2008).  Appellants argue that the Asafe harbor@ provided by the Act is in the nature
of an affirmative defense and, as such, could not be raised by appellees in a
no-evidence motion.  Appellants conclude that, in any case, appellees, not
appellants, bore the burden of proof and that they failed to satisfy their
burden.








In
appellees= motion for summary judgment, Schifani, Rawson, Rick Stevens, and Liz
Stevens asserted that, as Civic Club board members, they were entitled to
certain statutory protections provided by the Act, namely, those under its Asafe harbor@ provision.  See id. art.
1396-2.28.  They contend that appellants failed to present any evidence of the
three elements in the provision necessary to impose liability upon them and,
thus, they were entitled to judgment as a matter of law.

 

The Act
provides, in relevant part:

A director
is not liable to the corporation, any member, or any other person for any
action taken or not taken as a director if the director acted in compliance
with this article.  A person seeking to establish liability of a director must
prove that the director has not acted:

(1) in good
faith;

(2) with
ordinary care; and

(3) in a
manner the director reasonably believes to be in the best interest of the
corporation.

Id. 

a.         Burden of Proof








We first
consider which party bore the burden of proof under the Act=s safe harbor provision.  Appellants
argue that the Act=s safe harbor is an affirmative defense that could not be
raised in a no-evidence summary judgment motion.  In support of their argument,
they rely on Nowak v. DAS Investment Corp., 110 S.W.3d 677 (Tex. App.CHouston [14th Dist.] 2003, no pet.),
in which we held that Aa party may never properly move for no-evidence summary
judgment to prevail on its own claim or affirmative defense for which it has
the burden of proof.@  Id. at 679.  Appellants= reliance is misplaced.  Although
appellants are correct that a party may not move for a no-evidence summary
judgment to prevail on an affirmative defense, we disagree that the safe harbor
provision is an affirmative defense.  The provision is not among the
affirmative defenses enumerated in Texas Rule of Civil Procedure 94.  See Tex.
R. Civ. P. 94.  Further, while the list of affirmative defenses in Rule 94 is
not exclusive,[10] we are
unaware of any authority for the proposition that the Act=s safe harbor provision is an
affirmative defense, and appellants do not direct us to any.  To the contrary,
the statutory language makes clear that the party seeking to impose liability
on a director bears the burden of proof.  See Tex. Rev. Civ. Stat. Ann.
Art. 1396-2.28D (AA person seeking to establish liability of a director must
prove ....@) (emphasis added).[11]  Thus, it
was incumbent upon appellants to come forward with competent summary judgment
evidence showing that Schifani, Rawson, Rick Stevens, and Liz Stevens did not
act (1) in good faith, (2) with ordinary care, and (3) in a manner they
reasonably believed to be in the best interest of the corporation.

b.         Summary-Judgment Evidence 








In their
summary-judgment response, under the section entitled AResponse to Individual Issues,@ appellants argued that the appellee
directors may not invoke the protection of the safe harbor provision because
they Anot only violated their fiduciary
duties but committed (per Charles Kinsey) land >theft= ... [and] intentionally
participated, at one time or another, in a series of illegal actions designed
to enrich themselves at the expense of the membership.@  This assertion is the sum total of
appellants= discussion of the safe harbor provision.  They do not identify which
fiduciary duties the appellee directors allegedly violated,[12]
or in which self-enriching illegal actions they allegedly participated, which
would deny them protection under the Act=s safe harbor provision.[13] 
Moreover, there is no citation to any evidence nor to any legal authority to
support their position.  As an appellate court, it is not our duty to perform
an independent review of the summary judgment record for evidence supporting
appellants= position.  See King v. Wells Fargo Bank, N.A., 205 S.W.3d 731,
735 (Tex. App.CDallas 2006, no pet.).[14]








In the AArgument@ section of their Brief, appellants
address the safe harbor issue in nearly the same manner, referring to evidence
of a fraudulent land deal, violations of fiduciary duties, and a series of
self-enriching illegal actions.  This is the sole discussion of the issue of
the statutory safe harbor: there is no further analysis or any citation to the
record or legal authority.  Thus, even if appellants had presented sufficient
evidence to the trial court to survive summary judgment, they have failed to
adequately brief this issue on appeal and, in doing so, waived error.  See Tex.
R. App. P. 38.1(h) (AThe brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record.@); Howeth Invests., Inc. v. City
of Hedwig Village, 259 S.W.3d 877, 902 (Tex. App.CHouston [1st Dist.] 2008, pet.
denied) (finding appellant=s argument, which consisted of one paragraph with no citation
to legal authority, as inadequately briefed and refusing to consider it); Lundy
v. Masson, 260 S.W.3d 482, 503 (Tex. App.CHouston [14th Dist.] 2008, pet.
denied) (concluding that appellant failed to provide argument or cite authority
for contention on appeal and appellate court was Anot required to do the job of the
advocate@).

Moreover,
the evidence in the record supports the appellee directors= contention that they acted in good
faith, with ordinary care, and in a manner they reasonable believed to be in
the best interest of the corporation in carrying out their duties.  The Act
defines Aordinary care@ as Athe care that an ordinarily prudent
person in a similar position would exercise under similar circumstances.@  Tex. Rev. Civ. Stat. Ann. art.
1396-1.02(15).  The Act also provides that A[]in the discharge of any duty
imposed ... the director may in good faith rely on information, opinions,
reports, or statements ... that were prepared or presented by: (1) one of more
officers or employees of the corporation.@  Id.  art. 1396-2.28(B)(1).








As noted
above, one of the primary disputes between the parties is whether Manvel
Aviation owes assessments to the Civic Club.[15] 
Regarding  the issue of assessments, our review of the record reflects that the
appellee directors acted similarly to previous board members.  Beginning in
1991, the Civic Club boards, including those on which Priddy and McGraw served,
never assessed Manvel Aviation=s lots higher than 10% of the rate applicable to a regular
owner=s lot.  Priddy admitted as much in
his deposition.[16]  In 1994,
while on the Board, Priddy moved to adopt a report from the Treasurer regarding
owners who were more than two years delinquent on their assessments.  The
report did not list Manvel Aviation among them.  According to a 1995 Civic Club
board agenda, the Board planned to file liens against owners with past due
assessments.  However, no lien was ever filed against Manvel Aviation.  In
1997, Priddy prepared a spreadsheet at the top of which read AEach Lot Owned Pays $108 Yearly
Except Dickson=s.@  There is no entry for Manvel
Aviation.  The spreadsheet also contains a column for A[19]95 and Earlier Due,@ and the entries pertaining to Manvel
Aviation=s lots reflect a zero balance owing
for 1995 and earlier.  In 1998, upon becoming Board Treasurer, Schifani took possession
of the Civic Club=s financial books and records from Priddy and relied on them
in making assessments on behalf of the Civic Club.  These documents include
account ledger cards that contain a lot owner=s contact information as well as
information regarding the amount assessed by and paid to the Civic Club.  The
ledger cards reflect that Priddy made A@10%@ entries regarding Manvel Aviation=s lots.








Thus,
the evidence supports the appellee directors= position that, by assessing Manvel
Aviation=s lots at a reduced rate, they were
adhering to the practices of prior boardsCincluding those on which Priddy and
McGraw servedCin assessing Manvel Aviation=s lots.  See id. art.
1396-1.02(15) (defining ordinary care as Athe care that an ordinarily prudent
person in a similar position would exercise under similar circumstances.@)[17]
The appellee directors were entitled in good faith to rely on the information
prepared by previous boards in making those assessments.  See id.
art. 1396-2.28(B)(1).

 

c.         Waiver           

In their
Reply Brief, appellants contend that the issue of whether Manvel is the Declarant
under the deed must first be resolved before the trial court may consider
application of the statutory safe harbor.  They reason this contention is true
because resolution of the declarancy issue will be determinative of whether
Manvel is delinquent in its assessments,  and whether it was entitled to vote
in the Civic Club board elections when the appellee directors were elected.








Appellants,
however, have failed to preserve their argument for review.  Their summary
judgment response to appellees= safe harbor argument consisted of two paragraphs which did
not include an assertion that the declarancy issue must be resolved before
considering the application of the safe harbor provision.  Because appellants
did not expressly present this argument to the trial court, they have waived
this complaint.  See Tex. R. Civ. P. 166a(c) (AIssues not expressly presented to the
trial court by written motion, answer or other response shall not be considered
on appeal as grounds for reversal.@); Tex. R. App. P. 33.1 (as
prerequisite for presenting a complaint for appellate review, record must show
complaint was made to trial court by timely request, objection, or motion). 
Further, appellants did not make this argument in their original appellate
brief.  The Texas Rules of Appellate Procedure do not allow an appellant to
include in a reply brief a new issue not raised in the appellant=s original brief.  See Tex. R.
App. P. 38.3; Swaab v. Swaab, - - S.W.3d - -, 2008 WL 1838023, at *13
n.10 (Tex. App.CHouston [14th Dist.] Apr. 24, 2008, no pet.) (noting issue
raised for first time in appellate reply brief will not be considered on
appeal).[18]  Thus,
appellants have waived this argument.

In sum,
appellants did not carry their burden of adducing summary-judgment evidence
raising a fact issue with respect to the elements of the statutory safe
harbor.  Further, by failing to adequately address the issue in their brief,
they have also waived their complaint on appeal.  We conclude the trial court
properly granted summary judgment in favor of Rawson, Schifani, Rick Stevens,
and Liz Stevens on appellants= claims of fraud, breach of fiduciary duty, and director
liability for deed restriction violations, based on the safe harbor provision
of the Texas Non-Profit Corporation Act.[19]

B.        Dickson

1.         Fraud

Appellants
asserted a claim for fraud against all appellees in their pleadings.  The trial court
granted summary judgment in favor of appellees.  We address appellants= fraud claim as it
pertains to Dickson. 








To recover on an action for fraud, a party must prove that
(1) a material representation was made; (2) the representation was false; (3)
when the speaker made the representation, he knew it was false or made it
recklessly without knowledge of the truth and as a positive assertion; (4) the
speaker made it with the intention that it should be acted upon by the party;
(5) the party acted in reliance upon it; and (6) the party thereby suffered
injury.  In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex.
2001) (orig. proceeding); Lundy, 260 S.W.3d at 492.  Fraud is never
presumed, and when it is alleged, the facts sustaining it must be clearly
shown.  See Stephanz v. Laird, 846 S.W.2d 895, 903 (Tex. App.CHouston [1st
Dist.] 1993, writ denied).

In their Motion and Brief, appellees argue there is no
evidence Dickson knowingly made false representations, that appellants relied
upon any such misrepresentation, or that appellants suffered any damages.  In
the AResponse to
Individual Issues@ section of their summary-judgment
response, appellants do not address fraud.  Instead, the only reference to any
alleged fraud by Dickson appears under the section addressing breach of
fiduciary duty in which appellants contend that ADickson is not
only >knee deep= in the activity
... he is the ring leader, architect of the fraud, and primary recipient of the
land, funds, and benefits looted from the Civic Club.@  Appellants do
not identify any alleged misrepresentations by Dickson.  Further, appellants do
not present any evidence raising a fact issue with regard to the fraud elements
of reliance or damages.  As previously noted, we are not bound to perform an independent review of
the summary judgment record for evidence supporting appellants= position.  See King, 205
S.W.3d at 735.








In the AArgument@ portion of their Brief, under the
section entitled ABreach of Fiduciary Duty and Fraud,@ appellants assert that, once a
fiduciary relationship is established, a presumption arises that transactions
between corporate fiduciaries and their corporations are unfair.  From this
principle, appellants then reason that A[s]ince the presumption of fraud
exists in this case, the Movants were required to conclusively negate that
presumption.@  This is appellants= entire argument in support of their fraud claim.  Appellants
do not cite any authority to support their contention that a presumption of
unfairness translates into one of fraud, nor are we aware of any.  Moreover,
this assertion would presumably apply only to the appellee directors, not
Dickson, who was not a board member.  Appellants= argument is inadequately briefed.  See
Tex. R. App. P. 38.1(h) (AThe brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record.@); Howeth, 259 S.W.3d at 902
(finding appellant=s argument, which consisted of one paragraph with no citation
to legal authority, inadequately briefed); Lundy, 260 S.W.3d at 503.[20]

In
summary, appellants produced no summary-judgment evidence raising a genuine
issue of material fact regarding the elements of misrepresentation, reliance,
or damages in their fraud claim against Dickson.  Further, their challenge on
appeal lacks any analysis or citation to legal authority and, as such, is
insufficient to preserve error.  We conclude the trial court properly granted
summary judgment in favor of Dickson on appellants= fraud claim.

2.         Breach of Fiduciary Duty

In their
pleadings, appellants alleged that appellees engaged in a fraudulent pattern of
conduct designed to use Wolfe Airpark property and funds for their own private
enrichment.  The trial court granted summary judgment in favor of appellees on
appellants= breach of fiduciary claim.  We address appellants= claim as it relates to Dickson.








To
prevail on a breach of fiduciary duty claim, a plaintiff must show (1) a
fiduciary relationship between the plaintiff and the defendant, (2) a breach by
the defendant of his fiduciary duty to the plaintiff,  and (3) an injury to the
plaintiff or benefit to the defendant as a result of the defendant=s breach.  See Lundy, 260
S.W.3d at 501; Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App. CDallas 2006, pet. denied); Punts
v. Wilson, 137 S.W.3d 889, 891 (Tex. App.CTexarkana 2004, no pet.).  A
fiduciary relationship may arise from formal and informal relationships and may
be created by contract.  Lundy, 260 S.W.3d at 501; Cotten v.
Weatherford Bancshares, Inc., 187 S.W.3d 687, 698 (Tex. App.CFort Worth 2006, pet. denied). 
Fiduciary duties arise as a matter of law in certain formal relationships,
including attorney‑client and trustee relationships.  Meyer v. Cathey,
167 S.W.3d 327, 330 (Tex. 2005).  In contrast, an informal fiduciary duty may
arise from a moral, social, domestic, or purely personal relationship of trust
and confidence.  Id.; Cotten, 187 S.W.3d at 698.  To impose an
informal fiduciary duty, the relationship of trust and confidence must exist
prior to, and apart from, the agreement that is the basis of the suit.  Cotten,
187 S.W.3d at 698.








In their
Motion and Brief, appellees argue there is no evidence showing that Dickson
owed a fiduciary duty to appellants.  In their summary-judgment response,
appellants perfunctorily conclude that DicksonCin concert with the appellee
directorsCviolated his fiduciary duties to appellants but entirely fail to address
appellees= contention that no such duty exists.  Indeed, the record does not
reflectCnor do appellants contendCthat Dickson was ever a board member,
and we find no evidence otherwise demonstrating the existence of a formal
relationship upon which to base a fiduciary duty.  Further, we find no evidenceCnor do appellants direct us to any
evidenceCestablishing a relationship of trust
and confidence between appellants and Dickson giving rise to an informal
fiduciary duty.[21]  Similarly,
in their Brief, appellants argue only that directors and officers of a
corporation owe a fiduciary obligation to their corporation but do not explain
why Dickson, who is not a board member, would owe such a duty.  Thus, appellants
have waived this argument on appeal.  See Tex. R. App. P. 38.1(h). 

Appellants
failed to present competent summary judgment evidence raising a genuine issue
of material fact as to whether Dickson owed them a fiduciary duty.  Further, in
their Brief, appellants fail to address the existence of a fiduciary duty. 
Consequently, error, if any, is waived.  We conclude the trial court properly
granted summary judgment on appellant=s breach-of-fiduciary-duty claim
against Dickson.

3.         Assessments

In their
pleadings, appellants alleged that Dickson and/or Manvel failed to pay monthly
assessments on the lots owned in an amount in excess of $300,000.  They contend
Dickson is personally liable for the unpaid assessments because he disregarded
the corporate formalities of Manvel Aviation and treated the corporation as his
alter ego.  The trial court granted summary judgment in favor of Dickson on
this claim.

The
Texas Business Corporation Act provides that an owner of a corporation is not
liable for contractual obligations of the corporation under an alter ego theory
unless the plaintiff demonstrates that the owner Acaused the corporation to be used for
the purpose of perpetrating and did perpetrate an actual fraud on the obligee
primarily for the direct personal benefit of the ... owner.@  Tex. Bus. Corp. Act Ann. art.
2.21(A)(2) (Vernon 2003).[22]  The alter
ego doctrine applies Awhen there is such unity between corporation and individual
that the separateness of the corporation has ceased and holding only the
corporation liable would result in injustice.@  Solutioneers Consulting, Ltd. v.
Gulf Greyhound Partners, Ltd., 237 S.W.3d 379, 387 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
Actual fraud involves dishonesty of purpose or intent to deceive.  Id.








In their
Response and Brief, appellants allege the following in support of their
contention that Dickson is the alter ego of Manvel Aviation:

$                  
Schifani testified that he never
billed Manvel Aviation and that he dealt with Dickson.

$                  
From 1992 to 2003, all Civic Club
account cards were in Dickson=s name, not
Manvel Aviation=s.

$                  
Dickson, individually, bought an
airport hangar in 1990 with Kinsey, Vic Sturm, and David Cooper (acquiring 100%
ownership in 1994), then wrote off the expense from Manvel Aviation=s corporate tax returns.

$                  
Civic Club=s General Meeting Minutes dated January 22, 1994 state
ARumor: Richard Dickson is now sole owner of unsold
hangar lots.@

$                  
Minutes from April 4, 1998 meeting
with Schifani, David Eldridge, and Dickson state AR.D. claims about 100 lots ... R.D. to furnish tax receipts to verify.@

$                  
On January 23, 2003, Dickson
signed a proxy for land in his individual name.

$                  
In a letter to Schifani dated
March 23, 1998, Dickson wrote, AI received from
Frank Wolfe, and still own, the following lots ... I have always paid for
mowing my lots myself.@

$                  
In an e-mail to Schifani dated
January 7, 2002, Rick Norris wrote, AI
just returned from the lawyers ... Richard Dickson ownes [sic] Wolfe Airpark,
Inc. which intitles [sic] him [to] the status of >Declarant.=@

$                  
In an e-mail to
Schifani dated January 28, 2002, Gail Steele, a property owner, inquired
whether Dickson was current on his assessments.

Having
examined the evidence in the light most favorable to the non-movant, we
conclude that the above-cited evidence constitutes more than a scintilla of
probative evidence raising a question of material fact as to whether Dickson is
the alter ego of Manvel Aviation.  See McInnis v. Mallia, 261 S.W.3d
197, 202 (Tex. App.CHouston [14th Dist.] 2008, no pet.). 








This
conclusion, however, does not end our inquiry.  To establish Dickson=s personal liability for any
outstanding assessments, appellants were required to present competent summary
judgment evidence showing that he perpetrated an actual fraud primarily for his
personal benefit.  See Tex. Bus. Corp. Act Ann. art. 2.21(A)(2). 
However, in both their Response and Brief, appellants focus solely on whether
Dickson is the alter ego of Manvel Aviation, concluding in their Brief that A[i]f Manvel Aviation, Inc. is the >alter ego= of Richard Dickson, then Dickson is
personally liable for the assessments to Wolfe Airpark.@  Appellants do not allege that
Dickson committed an actual fraud for his own personal benefit nor do they cite
to any legal authority in support of such a claim.  Thus, they have waived any
error regarding this argument on appeal.  See Tex. R. App. P. 38.1(h). 
In the absence of any evidence of actual fraud by Dickson for his own benefit,
we conclude the trial court properly granted summary judgment on appellants= claim that Dickson is personally
liable for any unpaid assessments based on an alter ego theory.[23]


IV.  Conclusion

We overrule appellants= two issues and affirm the trial court=s judgment.                                  

 

 

 

/s/        Charles
Seymore

Justice

 

Panel consists of Justices Yates, Seymore, and Boyce.

 









[1]  Article III, Section 1.





[2]  Article I, Section 1 of the Declaration provides, in
relevant part: A>Civic Club=
shall mean and refer to WOLFE AIRPARK CIVIC CLUB, INC., a Texas Non-Profit
Corporation, and its successors.  The Civic Club has title to and administers
the common areas, and levies charges against the lot owners for common area
expenses.@





[3]  The Civic Club was incorporated in April 1998. 





[4]  Article I, Section 6.





[5]  Article IV, Section 6 provides, in relevant part, as
follows:

 

As long as
any lots are owned by the Declarant, the Board of Directors may charge and
collect from [D]eclarant a fraction of the annual assessment of each such lot
until the conveyance of said lot by Declarant to an Owner, provided that any
such fractional charge to Declarant shall not exceed ten percent (10%) of the
then current annual assessment.





[6]  Article III, Section 2.





[7]  The aforementioned pleadings and order are reflected
in the civil docket sheet but do not form part of the record before us.





[8]  Scott Van Deusen, a former Civic Club board member,
was also named as a third-party defendant. However,  he is not a party to this
appeal.





[9]  On this same day, the court also signed an order
denying Appellants= Motion for Summary Judgment on Declarancy Status and
Assessments.





[10]  See Robert W. Stayton, The Dallas Bar Speaks, 1941, General
Commentary to Tex. R. Civ. P. 94 (A[T]he extensive list of illustrative affirmative defenses
is borrowed from the Federal rules, but it is not exclusive.@)              





[11]  But cf. Tex. Tax Code Ann. ' 171.255(c) (Vernon 2008) (safe harbor provision
providing exception to liability of director or officer for debts of
corporation which has forfeited its corporate privileges).  This safe harbor
provision states that A[a] director or officer is not liable for a debt of
the corporation if the officer or director shows that the debt was
created or incurred: (1) over the director=s
objection; or (2) without the director=s
knowledge and that the exercise of reasonable diligence to become acquainted
with the affairs of the corporation would not have revealed the intention to
create the debt.@  Id. (emphasis added).  The unambiguous
language of this Tax Code provision makes clear that the director or officer of
a corporation seeking to escape personal liability has the burden to prove he
objected to or did not consent to the debt.  See In re Trammell, 246
S.W.3d 815, 822 (Tex. App.CDallas 2008, no
pet.); PACCAR Fin. Corp. v. Potter, 239 S.W.3d 879, 884 (Tex. App.CDallas 2007, no pet.); Williams v. Adams, 74
S.W.3d 437, 442 (Tex. App.CCorpus Christi
2002, pet. denied).  In contrast, the language of the safe harbor provision at
issue here clearly places the burden of proof upon the person seeking to impose
liability upon a director.





[12]  Notwithstanding, it is unclear whether they would
owe a duty to the individual appellants in the first place, as opposed to the
Civic Club.  See, e.g., Hoggett v. Brown, 971 S.W.2d 472, 488 (Tex. App.CHouston [14th Dist.] 1997, writ denied) (noting
director=s fiduciary duty runs only to corporation, not to
individual shareholders).





[13]  Appellants=
allegation of land theft appears to stem from the deposition testimony of
attorney Charles Kinsey.  When asked about a cash warranty deed granting a lot
in the subdivision to him, Kinsey testified as follows:

 

Q:         Okay.  Now, the Wolfe Airpark, Inc. that is
referred to in the Cash Warranty Deed dated May 19, 1998 is actually not the
Wolfe Airpark, Inc. that owned the land?

A:         That=s
correct.

Q:         So what=s
that about?

A:         Well, I mean, I=ve owned the lot for years and years.  I had -- I just
went ahead and did a deed to myself.

Q:         The --

A:         And eventually under the statute of
limitations, I=ll become a land thief.

Q:         Say again.

A:         After 10 years, it won=t make any difference anyway, will it?

Q:         You mean under adverse possession?

A:         Sure.

                                                                              

Appellants=
allegation of land theft does not acknowledge the portion of Kinsey=s testimony that he had Aowned the lot for years and years.@ 
Notwithstanding, it is unclear how Kinsey=s
actions would be attributable to the appellee directors.





[14]  We also note that appellants make no mention of the
third element of the statutory safe harbor in either their Response or Brief.





[15]  In light of our conclusion regarding application of
the safe harbor provision to the appellee directors, we do not reach this
question.





[16]  When asked in his deposition why Manvel Aviation had
been assessed at the 10% rate, Priddy denied that it was because he considered
Manvel Aviation to be the Declarant.  Instead, he testified that he arbitrarily
picked that amount because he thought Dickson might pay it. 





[17]  In their Reply Brief, appellants argue that
appellees= claim that appellants treated Manvel as the Declarant
is Asmoke and mirrors.@ 
They then conclude that Acourse of conduct@ is
not recognized as a exception to the Statute of Frauds or the Texas Recording
Statute.  Appellants offer no further analysis nor do they cite any legal
authority to support their position.  This argument is inadequately briefed and
will not be considered.  See Tex. R. App. P. 38.1(h) (AThe brief must contain a clear and concise argument
for the contention made, with appropriate citations to authorities and to the
record.@).  Further, appellants did not raise this issue in
their summary-judgment response.  See Tex. R. Civ. P. 166a(c) (AIssues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on appeal as
grounds for reversal.@).





[18]  Notwithstanding, the parties= dispute regarding Manvel=s status does not vitiate appellants= burden to come forward with
competent summary judgment evidence to raise a genuine issue of material fact
on the elements of the statutory safe harbor.





[19]  In their Reply Brief, appellants also assert that Dickson cannot avail himself of the
protection of the statutory safe harbor because he is not a member of the Board
of Directors.  We need not address this argument because only Rawson, Schifani,
Rick Stevens, and Liz Stevens sought summary judgment on this ground.





[20]  In the fact section of their Brief, appellants
allege that Dickson paid hundreds of dollars for the private individual legal
fees of the appellee directors.  Appellants further contend that Dickson
personally paid money to the Civic Club attorneys so that they would sue
appellants because they had opposed the appellee directors in board elections. 
As evidence of these payments, appellants refer to two checks written by
Dickson to Novelli, Harvie, and Huzinac, P.C.  However, appellants do not make
any attempt to tie these alleged facts to the elements of fraud challenged by
appellees.  Moreover, it is unclear how Dickson=s payment of attorneys= fees is, in
and of itself, evidence of wrongdoing.





[21]  When asked in his deposition to explain the basis
for his claim that Dickson owed him a fiduciary duty, Priddy testified as
follows:

 

Q:         Do you claim that Richard Dickson owed
fiduciary duties to you?

A:         Absolutely.

Q:         What=s
the basis of that claim?

A:         He controls the Board of Directors, who
controls the Civic Club and my life.

Q:         What fiduciary duty does Richard Dickson
owe to you?

A:         Moral and ethical responsibility not to
influence the Board of Directors illegally as he has done.

 

Appellants, however, offer no evidence whatsoever
demonstrating the existence of a relationship of trust and confidence that
would give rise to such a moral responsibility.





[22]  This article is now re-codified in sections 21.223B.226 of the Texas Business Organizations Code, Act of
May 13, 2003, 78th Leg., R.S., ch. 182, ' 1,
2003 Tex. Gen. Laws 267, 427B28.





[23]  In their Brief, appellants do not complain about the
summary judgment denying their claim that Rawson owed assessments,
individually.  By failing to present this ground in an issue or argument on
appeal, appellants have waived any error with regard to this contention.  See
Jacobs v. Satterwhite, 65 S.W.3d 653, 655 (Tex. 2001).