Opinion issued May 19, 2011.



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-08-00852-CV

———————————

Boston INVESTORS Group, Inc., Appellant

V.

Three Arch Capital, Appellee



 



 

On Appeal from the 55th District
Court

Harris County, Texas



Trial Court Case No. 2006-48728

 



 

MEMORANDUM OPINION

Seeking
recovery of surplus proceeds from a foreclosure sale to satisfy a second lien
on real property, Three Arch Capital (“Three Arch”) sued Boston Investors
Group, Inc. (“Boston”).  Boston denied
that Three Arch held a valid second lien and further asserted that the sale—in which
Boston was listed as both the seller and the purchaser of the property—was a
mistake.  After a bench trial resulted in
a judgment in Three Arch’s favor, Boston brought this appeal, in which it
raises twelve points of error.  

We affirm.

BACKGROUND

When Arturo and Yolanda Rodriguez bought their home in
Pasadena, Texas, they executed a first note payable to New Century Mortgage
Corporation (“New Century”), for the principal amount of $400,000 and, that same
day, signed a second note for $100,000, also payable to New Century.  Both notes were secured by deeds of trust
that gave New Century liens on the property.

New Century
subsequently transferred the first note to Boston, which, after the Rodriguezes
defaulted, appointed James D. Kuehn as a substitute trustee on October 13, 2005, to begin foreclosure
proceedings.  That same day, Kuehn sent a
letter to the Rodriguezes warning them of Boston’s intent to foreclose.

On November
1, 2005, in exchange for the payment of a certain sum, Boston agreed to assign the
first note to Global Equity Holdings, LLC (“Global Equity”), a company with
which it shared offices.[1]  Boston was also to receive forty-two percent
of the foreclosure sale proceeds.  The
record does not reflect, however, that Boston actually assigned its interest in
the first note to Global Equity prior to the date of the foreclosure sale. 

 Kuehn sent another letter to the Rodriguezes
on November 13, 2005, this time informing them that Global Equity intended to
foreclose.  On December 6, 2005, Kuehn
held a non-judicial foreclosure sale, listing Boston as the foreclosing
note-holder.  Following information given
to him by Boston about the bid amount, Kuehn purchased the property in Boston’s
name for $553,024.39, an amount exceeding the balance owed on the first note.

Three Arch, learning of the sale and the surplus amount,
sought an accounting from Boston and payment of the second note of $100,000,
which, Three Arch asserted, had been assigned to it by New Century in
2005.  After its attempts were
unsuccessful, Three Arch sued Boston, asserting a perfected security interest
in the property, breach of fiduciary duties to Three Arch as a junior lienholder
by refusing to provide an accounting, misrepresentation that the foreclosure
sale yielded no surplus proceeds, and withholding of those sums to which Three
Arch was entitled.  Three Arch requested
an accounting, actual damages, and attorney’s fees.  

Boston filed a verified denial, affirmatively pleading that
Three Arch was not the owner and holder of the second note and deed of trust, the
alleged assignment was not genuine, and the affirmative defense of
mistake.  Boston also filed a
counterclaim and, pursuant to the Texas Declaratory Judgment Act[2] (“TDJA”),
requested a “declaration that the Substitute Trustee’s Deed was the result of a
mistake and should be rescinded and cancelled” along with all subsequent
conveyances of the property to various parties.

Three Arch thereafter amended its
petition seeking a declaration as to “its right to excess proceeds” and that
“all exceed proceeds from the foreclosure sale of the Property be awarded to
Plaintiff.” 

At trial, Three Arch introduced,
among other items:

(1)            
the original
second note with a blank endorsement on the back (plaintiff’s exhibit four);

(2)            
an allonge to the
original second note payable to Three Arch dated August 15, 2005 (plaintiff’s
exhibit five); 

(3)            
an assignment of
the deed of trust on the second note from New Century to Three Arch, dated
September 30, 2004 (plaintiff’s exhibit six);

(4)            
an assignment of
the deed of trust on the second note from New Century to Northwest Funding
Group LLC and Pacific Island Investment Partners, LLC, two of Three Arch’s
subsidiary companies, also dated September 30, 2004 (plaintiff’s exhibit seven);


(5)            
an assignment of the
deed of trust from Northwest Funding and Pacific Island to Three Arch, dated
February 23, 2007 (plaintiff’s exhibit eight); 


(6)            
the appointment
of a substitute trustee, dated October 13, 2005, appointing Kuehn as substitute
trustee to sell the property, signed by Suresh C. Mody as President of Boston,
filed with the Harris County Clerk on the date of the foreclosure sale,
December 6, 2005 (plaintiff’s exhibit eleven); 

(7)            
the substitute
trustee’s deed, signed by Kuehn, listing Boston as both the holder of the note
and the buyer of the property for the amount of $553,024.39 (plaintiff’s
exhibit twelve); and 

(8)            
a special
warranty deed conveying the property from Boston to Global Equity executed
January 18, 2006 (plaintiff’s exhibit thirteen).               

Three Arch’s corporate representative, Brandon Brown,
a portfolio manager for Three Arch, testified that Three Arch owned the second
lien on the Rodriguez property.  According
to Brown, New Century assigned the second note to Three Arch in 2005 after
Three Arch had purchased a portfolio from New Century that included the
Rodriguez loan.  Three Arch’s attorney,
Sam Houston, testified regarding attorney’s fees. 

Boston
introduced:

(1)            
a memorandum of
understanding between Boston and Global Equity, dated November 1, 2005 (defendant’s
exhibit one); 

(2)            
 a special warranty deed, executed January 18,
2006 (defendant’s exhibit two) (same as plaintiff’s exhibit thirteen);

(3)            
a notice of
intent to foreclose sent by Kuehn to the I.R.S. dated November 11, 2005 (defendant’s
exhibit three);

(4)            
an assignment of deed
of trust from New Century to Northwest Funding, dated September 30, 2004 (defendant’s
exhibit four (same as plaintiff’s exhibit 7); and

(5)            
a letter from
Kuehn to the Rodriguezes, dated November 13, 2005 (defendant’s exhibit five).

Boston’s president, Suresh Mody, testified that after
Kuehn’s appointment as trustee, Boston learned that the Rodriguez property had
sustained considerable damage.  It then
assigned its interest in the property to Global Equity on November 1, 2005, and
informed Kuehn of the assignment. 
According to Mody, the written materials he sent to Kuehn providing the
bid price for the foreclosure sale were sent as a courtesy to Global Equity,
not as an instruction to Kuehn to bid because Boston did not intend to foreclose
on the property, and it did not authorize Kuehn to foreclose on or purchase the
property in Boston’s name.  Boston
further challenged any award of attorney’s fees to Three Arch, arguing that
such an award was improper in a suit for damages.

The trial
court found Three Arch to be the holder of the note, recessed without making
any additional findings, and invited the parties to submit subsequent briefing.[3]  The court ultimately issued a judgment in
Three Arch’s favor, awarding $107,771.00 in actual damages plus attorney’s
fees. 

THREE ARCH’S RIGHT

TO ENFORCE THE SECOND NOTE

In its first five points of
error, Boston complains of the trial court’s findings and conclusions regarding
Three Arch’s rights to enforce the second note.[4]  Boston contends that Three Arch’s exhibits five,
six, and seven were improperly admitted (points of error one, two, and three),
which caused the rendition of an improper judgment because without those
exhibits, “there was no competent evidence” to support the trial court’s
“finding and conclusions” that Three Arch was the owner and holder of the
second note and deed of trust (points of error four and five).  

I.                 
Point of
Error Four: Legal Sufficiency of the Evidence

In its fourth point of error, Boston
asserts that there is no evidence, or alternatively, insufficient evidence, to
support the trial court’s finding that Three Arch was the owner and holder of
the second note (finding of fact number two).  We interpret Boston’s sufficiency challenge as
a challenge to the legal sufficiency of the evidence to support this
finding.  See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002) (describing legal sufficiency as “no-evidence” challenge).  We will consider Boston’s complaints
regarding the admission of Three Arch’s exhibits five, six, and seven as part
of our discussion of the sufficiency of the evidence supporting this factual
finding.  

a.                
Standard of Review

Findings of fact in a case tried to
the court have the same force and effect as a jury’s verdict and are reviewed
under the same sufficiency standards applicable to jury verdicts.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  Unchallenged fact findings are binding on the
appellate court unless the contrary is established as a matter of law or if
there is no evidence to support the finding.  Davey v.
Shaw, 225 S.W.3d 843, 853 (Tex. App.—Dallas 2007, no pet.).  “[A]n appellate court will overrule a
challenge to fact findings that underpin a legal conclusion or disposition when
other fact findings that also support the legal conclusion or disposition go
unchallenged.”  Howeth Invs., Inc. v. City of Hedwig Village, 259 S.W.3d 877, 889
(Tex. App.—Houston [1st Dist.] 2008, pet. denied) (internal citations and
quotations omitted).

In reviewing
the legal sufficiency of the evidence, we must consider the evidence in the
light most favorable to fact-finder’s decision and indulge every reasonable
inference that would support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  “The final test for legal
sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review. . . .
[L]egal-sufficiency review in the proper light must credit favorable evidence
if reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.”  Id. at 827.  The trial court evaluates the credibility of
the witnesses, determines the weight to be given their testimony, and resolves
conflicts and inconsistencies in the testimony. 
Sw. Bell Media, Inc. v. Lyles,
825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  An appellate court may not impose its own
opinion on these matters contrary to that of the fact-finder.  See City of Keller, 168 S.W.3d at 819.  

          When a party attacks the
legal sufficiency of an adverse finding on which it did not have the burden of
proof, it must demonstrate that there is no evidence to support the adverse
finding.  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983).  Such a
no-evidence challenge will be sustained when “‘(a) there is a complete absence
of evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.’”  King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  More than a scintilla of evidence exists when
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Havner, 953 S.W.2d at 711).  However, evidence does not exceed a scintilla
if it is so weak as to do no more than to create a mere surmise or suspicion
that the fact exists.  Id. (quoting Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 

b.               
Some Evidence that Three Arch Was the Owner and Holder of the Second Note  

          We first observe that Boston does not challenge finding of fact number nine,
in which the trial court found that Three Arch has a secured interest in the
excess proceeds of the foreclosure sale in the amount of $107,771.  This finding of fact is sufficient to support
the trial court’s conclusions of law numbers twenty and twenty-two, which
required Boston to pay Three Arch the sum of its secured interest from the
excess proceeds.  It also provides the
basis to overrule Boston’s legal sufficiency challenge to finding of fact
number two.  See Howeth Invs, 259 S.W.3d at 889.

          Thus, the trial court had evidence
before it to find that Three Arch was the holder of the second note.  Putting aside plaintiff’s challenged exhibits
five, six, and seven, the record indicates that plaintiff’s exhibit four, the
original second note,[5]
contained a blank endorsement.  This fact
was not challenged below or on appeal. 

          When
an instrument contains a blank endorsement, it becomes payable to the bearer
and may be negotiated by transfer of possession alone.  Tex.
Bus. & Com. Code Ann. § 3.205 (b)
(West 2002).  Although Boston challenged Brown’s testimony as to how Three Arch came
to possess the original note, the resolution of fact issues is the trial
court’s province.  Sw. Bell
Media, 825 S.W.2d at 493.  Transfer of an instrument vests in
the transferee the right to enforce the instrument, including any right as a
holder in due course.  Tex. Bus. & Com. Code Ann. § 3.203 (West 2002).  Accordingly, Three Arch’s possession of the original note with a blank
endorsement is some evidence that it was the owner and holder of the second
note.  Because there is some evidence to
support the trial court’s finding of fact number two, Boston’s legal
sufficiency challenge fails.  See Croucher,
660 S.W.2d at 58.

          Accordingly,
we need not discuss Boston’s first three points of error, in which it challenges
the admission of exhibits five, six, and seven, because even if these exhibits
were erroneously admitted, an issue we do not decide, it would have been
harmless error as their admission would not have caused the rendition of an
improper verdict in light of the existence of plaintiff’s exhibit four.  See Tex. R. App. P. 44.1(a)(1).

          We overrule points of
error one, two, three and four.

II.              
Point of Error Five: Conclusion of Law Numbers Twenty
and Twenty-Two

In its fifth point of
error, Boston challenges the trial court’s conclusion of law number twenty, in
which it ruled that Three Arch had a secured interest in the note, and conclusion
of law number twenty-two, in which it ruled that Boston owed Three Arch the sum
of $107,771.00.  Boston argues that there
is “no competent evidence” to support these conclusions of law.[6]  Having determined that the evidence
is legally sufficient to support the trial court’s finding that Three Arch was
the sole holder and owner of the second note on the property, secured by a
second deed of trust (point of error four), we overrule point of error five.

BOSTON’S AFFIRMATIVE DEFENSE OF MISTAKE

          In points of error six
through eleven, Boston complains of the trial court’s findings of fact and
conclusions of law regarding its affirmative defense of mistake.  Again, Boston groups its argument with no
subheadings, segregation, or discrete discussion of issues, and it cites three
authorities for six points of error.  It
argues that the trial court erred in not believing Boston’s evidence and in not
finding that it was entitled to equitable relief on the basis of mistake.  There is no discussion of the appropriate
standard of review, nor application to the facts.  See Tex. R. App. P. 38.1(i).  To the extent that we can discern these arguments, we address them. 

I.                 
Points of Error Six, Seven
and Eight: Factual Sufficiency of the Evidence 

In its
points of error six, seven, and eight, Boston attacks the trial court’s
findings of fact as they relate to its affirmative defense of mistake and its
claim for equitable relief.  Although it
is not clear from the briefing, it appears as though Boston is challenging the
factual sufficiency of the evidence to support these findings of fact.  We will review these challenges accordingly.

When, as
here, a party attacks the factual sufficiency
of an adverse finding on an issue on which it had the burden of proof, the party must
demonstrate that the adverse finding is against the great
weight and preponderance of the evidence. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); Grider
v. Mike O’Brien, P.C., 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.]
2008, pet. denied).  A reviewing court
must consider and weigh all of the evidence and can set aside a verdict only if
the evidence is so weak or the finding is so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  Dow Chem. Co., 46 S.W.3d at 242.  In a
bench trial, the trial court evaluates the credibility of the witnesses,
determines the weight of testimony, and resolves conflicts
and inconsistencies in the testimony.  See
Sw. Bell Media, 825 S.W.2d at 493. 
As long as the evidence falls “within [the] zone of reasonable
disagreement,” we will not substitute our judgment for that of the fact-finder.
 City of Keller, 168 S.W.3d at
822.

Boston complains that the trial court erred as a
matter of law, when it found that (1) “there was no mistake in the bid
price instructions given to Mr. James Kuehn” (point of error six)[7], (2)
Boston “sold the property at a foreclosure sale on December 6, 2005 and [Boston]
purchased the property at the foreclosure sale on December 6, 2005” (point of
error seven)[8],
and (3) Boston “did not assign the note prior to the December 6, 2005 [sale]”
(point of error eight).[9]  All of these findings are supported by the
documentary evidence, including the deed of sale which lists Boston as both the
seller and the buyer of the property at a foreclosure sale on December 6, 2005, and the appointment
of Kuehn as Boston’s substitute trustee for purposes of the sale.  The record indicates that Kuehn conducted the
foreclosure sale solely under his authority as substitute trustee for Boston.  Mody, Boston’s president, testified that he
gave instructions to Kuehn on the bid amount days before the foreclosure sale.  

In support
of its position, Boston relies heavily upon the testimony of Mody and the
November 1, 2005 “Memorandum of Understanding” in which Boston agreed to assign
its interest in the property to Global Equity on the following day.  This memorandum, however, is not an
assignment; it merely reflects the parties’ agreement to assign the property on
a future date.  Aside from the testimony
of Mody, the record contains no evidence that the assignment actually
transpired.  Although Mody acknowledged
giving the bidding instructions to Kuehn, he also testified that (1) Boston did
not own the property as of the December 6, 2005 sale, (2) he only passed along
the bidding instructions to Kuehn as a favor to the true owner, Global Equity,
(3) he made an error in those bidding instructions, and (4) he did not instruct
Kuehn to bid on behalf of Boston.  Here,
the trial court apparently did not believe at least some portions of Mody’s
testimony, which, as the sole finder of fact, it was within its discretion to
do.  See
City of Keller, 168 S.W.3d at 819.

We conclude
that the adverse findings were not so against the great weight and
preponderance of the evidence such that they were clearly wrong or manifestly
unjust.  See Dow Chem. Co., 46
S.W.3d at 242.  

We overrule
points of error six, seven, and eight.

II.              
Points of Error Nine, Ten,
and Eleven: Challenges to Conclusions of Law

          Boston also challenges the
trial court’s conclusion of law numbers nineteen (point of error nine), twenty-two
(point of error eleven), and twenty-three and twenty-four (point of error
ten).  It argues that the trial court’s
conclusions of law are erroneous because they are based on erroneous factual
findings.  We review a trial court’s
legal conclusions de novo.  See BMC Software, 83 S.W.3d at 794.

 

 

a.                
Point of Error Nine (Conclusion of Law Number Nineteen)


In its ninth point of error, Boston complains that the
trial court erred when it concluded that “[t]he December 6, 2005 foreclosure
sale of the Property was a valid sale.” 
Boston appears to complain that this conclusion is not supported by the
evidence because Boston proved that it had assigned the note prior to the
foreclosure sale.  As we have already
held against Boston on this factual question (point of error eight), we
likewise overrule its challenge to the trial court’s legal conclusion regarding
the validity of the sale. 

We overrule
point of error nine.

b.               
Point of Error Ten (Conclusion of Law Numbers Twenty-Three and Twenty-Four)

In its tenth point of error,
Boston complains that the trial court erred when it concluded that “no relief
existed that would entitle [Boston] to any equitable relief or any relief on
its affirmative defenses.”  Although
Boston sets out the legal basis under which a trial court may grant equitable
relief against a unilateral mistake in the context of a contract, it fails to
discuss or provide relevant record and legal citations demonstrating how it
proved any necessary legal burdens and why it was error for the trial court to conclude
that it had not met its burden to be entitled to either equitable relief or
relief on its affirmative defense, apart from an argument that the trial court
erred in making the underlying factual finding. 
See Tex. R. App. P. 38.1(i).
 We have already held against Boston
on its complaint regarding the trial court’s factual finding on the question of
mistake.  Accordingly, we overrule
Boston’s challenge to the legal conclusions arising from such a finding.   

We overrule
point of error ten. 

c.                 
Point of Error Eleven (Conclusion of Law Number
Twenty-Two)

In its eleventh point of
error, Boston complains that the trial court erred as a matter of law when it
concluded that Boston “owes [Three Arch] $107,771.00 and entering judgment in
that amount.”  In its “Arguments and
Authorities” section, Boston cites no authorities, tenders no specific
discussion, and advances no discrete arguments regarding how the trial court
erred as a matter of law in concluding that Boston owed the specified amount
and in entering judgment in such an amount.[10]  See Tex. R.
App. P. 38.1(i).  We hold that Boston has waived this issue on appeal and we decline to
address it.

We overrule point of error eleven. 

ATTORNEY’S FEE AWARD

In its twelfth point of error, Boston asserts that the trial
court improperly awarded attorney’s fees to Three Arch.  It argues that Three Arch’s claim under the TDJA
was made solely as a means to recover (otherwise unrecoverable) attorney fees
and, thus, the trial court erred by awarding the fees.  At
the outset, we note that that Boston initially invoked the TDJA,
pursuant to which the trial court may award reasonable and necessary attorney’s fees that are equitable and just.  Tex. Civ. Prac. & Rem. Code §
37.009 (West 2008).  Further, Boston does not contend that the attorney’s
fees awarded were unreasonable or unnecessary.  The TDJA “entrusts attorney
fee awards to the trial court’s sound discretion, subject
to the requirements that any fees awarded be reasonable
and necessary, which are matters of fact, and to the additional requirements
that fees be equitable and just,
which are matters of law.”  Bocquet v.
Herring, 972 S.W.2d 19, 21
(Tex. 1998).  Therefore, we review a
trial court’s award of attorney’s fees
under the TDJA for an abuse of discretion.  Id. 
A trial court abuses its discretion by ruling arbitrarily, unreasonably, without
regard to guiding legal principles, or without supporting evidence.  Id.

Under the TDJA, the trial court may exercise its discretion
to award attorney’s fees to a party seeking or defending
against a claim for declaratory relief.  See Petroleum Analyzer Co. LP v. Olstowski, No.
01–09–00076–CV, 2010 WL 2789016, at *21
(Tex. App.—Houston [1st Dist.] Jul. 15, 2010, no pet.) (mem. op.) (holding trial court
properly awarded attorney’s fees to party defending against claim for declaratory
relief).  Here,
the trial court found that the “attorney’s fees and expenses incurred by Three
Arch Capital were reasonable and necessary to obtain a declaratory judgment
that there were excess proceeds from the foreclosure sale.”  

Three Arch’s counsel testified on cross-examination that he
did not segregate the time spent on prosecuting Three Arch’s case from Boston’s
counterclaim for declaratory judgment because he “consider[ed] the counterclaim
an integral part of prosecuting the case” and “it would all be part of the same
thing and necessary in order to present [Three Arch’s] case to include all of
it as the same fees.”  Because it was
necessary for Three Arch to defend against Boston’s declaratory judgment claim
in order for it to succeed on its own claim, we conclude that the trial court
did not abuse its discretion when it awarded attorney’s fees to Three Arch. 

          We overrule Boston’s twelfth point of
error.

CONCLUSION

 

          We affirm the judgment of
the trial court. 

 

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Sharp. 











[1]           Boston
and Global Equity memorialized their agreement in a Memorandum of
Understanding, dated November 1, 2005. 
Although the parties agreed that payment would be made the following
day, November 2, 2005, the record does not reflect that Global Equity paid Boston
prior to the date of the foreclosure sale.





[2]           Tex. Civ. Prac. & Rem. Code Ann. § 37.004
(West 2008).

 





[3]           The
appellate record contains no such supplemental briefing.





[4]           In
approximately four pages, Boston argues all five points of error under a single
heading, with no subheadings separating its arguments and no discrete
discussions of each separate point.





[5]           A copy
was substituted for the record on appeal. 
That copy does not include the endorsement, but the record clearly
establishes the existence of the blank endorsement on the original. 





[6]           Boston, however, does not assert
how the trial court’s conclusions were erroneous as a matter of law, apart from
its argument that there is no competent evidence that Three Arch was the owner
or holder of the note.  See Tex.
R. App. P. 38.1(i).





[7]           Point
of error six appears to correspond with finding of fact number three, in which
the trial court found that Mody, acting on behalf of Boston, gave bidding
instructions to Kuehn to bid on the property at the foreclosure sale and Kuehn
followed these instructions.





[8]           Point
of error seven appears to correspond with findings of fact numbers four and five,
in which the trial court found that Boston sold the property to itself at the
December 6, 2005 foreclosure sale for $553,024.39 and that “the bid was not a
mistake.”  The portion of finding of fact
number five that states that “the bid was not a mistake,” appears to be a
conclusion of law that corresponds to point of error ten (conclusion of law
number twenty-three), discussed below.





[9]           Although
it does not mention this finding by number, Boston’s point of error eight appears
to be challenging finding of fact number six in which the trial court found
that Boston did not assign the note prior to December 6, 2005.  





[10]          We note also that Boston did not
file a motion for new trial and did not file any post-judgment motion
complaining of this sum of damages.